## Ulysse S. Campbell v. Howard National Bank & Trust Co. et als

(103 A2d 96)

January Term, 1954.

Present: Sherburne, C. J., Jeffords, Adams and Chase, JJ., and Shangraw, Supr. J.

Opinion Filed February 2, 1954.

A. *Pearley Feen*, *Joseph C. Mc Neil* and *Paul D. Sheehey* for the defendants.

*Mc Namara & Larrow* and *Russell F. Niquette* for the plaintiff.

**Adams, J.** This is an action of contract to recover a commission for the sale of real estate. Trial was by jury with resulting verdict and judgment for the plaintiff. The case is here on exceptions of the defendants.

█ The only exceptions briefed are to the denial of the defendants' motions for a directed verdict, to set aside the verdict and for judgment notwithstanding the verdict. All other exceptions are therefore waived. *Little* v. *Loud*, 112 Vt 299, 301, 23 A2d 628; *Town of Randolph* v. *Ketchum*, 117 Vt 468, 470, 94 A2d 410.

The declaration is in two counts. The first count seeks to recover a commission of $20,000. for producing a person, Mrs. Peter Handy, ready, willing and able to purchase certain real estate with buildings thereon known as the "Strong Building Property" so-called in the city of Burlington and to whom the defendants did not sell. The second count seeks to recover a commission of $20,000. on the sale of the same real estate by the defendants to one Cody, a person procured by the plaintiff.

█ In passing upon a motion for a directed verdict the evidence must be taken in the light most favorable to the plaintiff and the ruling of the trial court sustained if the evidence so viewed fairly and reasonably tends to support the verdict. *Tinney* v. *Crosby*, 112 Vt 95, 101, 22 A2d 145; *State* v. *Wilson*, 113 Vt 524, 526, 37 A2d 400; *Cobb* v. *Olsen*, 115 Vt 266, 268, 56 A2d 471. The effect of modifying evidence is to be excluded. Contradictions and contradictory inferences are for the jury to resolve. The tendency of the evidence and not its weight is to be considered. *Hill* v. *Stringer*, 116 Vt 296, 299, 75 A2d 657; *Frenier* v. *Brown*, 116 Vt 538, 540,

80 A2d 524. If there is any substantial evidence fairly and reasonably tending to support the plaintiff's claim, the question is for the jury. *Stevens* v. *Wright*, 107 Vt 337, 340, 179 A 213; *Domina* v. *Pratt*, 111 Vt 166, 171, 13 A2d 198; *Silveira* v. *Croft*, 116 Vt 420, 422, 77 A2d 911.

The evidence pertaining to count one, tended to show the following facts: The plaintiff has been a licensed real estate broker for about seven years. About five years ago the defendant, Howard National Bank & Trust Co., as co-administrator listed with the plaintiff for sale what is known as the Strong Theatre Building. The listing included the building and land which the parties refer to as parcel number one on a plan dated June 23, 1946, plus a right of way. The plaintiff knew in a general way how the title to the property stood and the property generally. He knew the estates of which the bank was co-administrator owned other land in the same area. This other land is referred to by the parties as parcels 2, 3 and 4 on the same plan. The price given the plaintiff was $250,000 net to the estates. His commission was to be 10%. He therefore quoted to prospective purchasers a price of $275,000. The plaintiff was informed that a purchaser would be required to give a lease for the term of ten years at $7,500 per year to the Strong Hardware Co. of that part of the premises occupied by it.

In April 1951, Mr. and Mrs. Ernest Handy of Burlington, through the plaintiff became interested in purchasing the property. The plaintiff tried to get financing through various banks and insurance companies for them but was unsuccessful. Mrs. Ernest Handy is the daughter of Mrs. Peter Handy. The conferences or many of them between the plaintiff and Mr. & Mrs. Ernest Handy took place in their home on King Street. Mrs. Peter Handy lived in the same house. A Mr. Ordway was trust officer of the bank and was handling the sale for it. The plaintiff had taken Mr. & Mrs. Ernest Handy to the bank and they had discussed with Ordway several times their prospective purchase of the property. The plaintiff was called to the bank several times and discussed with Ordway the Handys as purchasers. He gave Ordway at his request a letter stating that the plaintiff's commission on a sale of

$250,000 would be 10%, that he had priced the property at $275,000. and that he claimed no exclusive in the sale other than to the party "we held conference with, namely, Mr. & Mrs. Ernest Handy or any one connected with them." After that the plaintiff was called to the bank and informed that the price was reduced $50,000 to $200,000. net. He informed Mr. & Mrs. Ernest Handy about this. The bank informed the plaintiff that if the Handys could pay $100,000. down, the bank would be interested in a mortgage for $120,000.

Mrs. Peter Handy learned from the Ernest Handys of their interest in the property, the reduced price and their inability to finance the purchase. She concluded it was a good buy and contacted her lawyer, Mr. Fayette, giving him authority to purchase it for her. She had extensive real estate holdings in Burlington with which the bank was familiar. She told Fayette to use this property to raise the money and gave him a list of it. Fayette had been her attorney for a long time and knew about her property and its title. That same day, Monday, August 13, Fayette talked with Ordway and informed him that he had a client as a customer for the property, Mrs. Peter Handy, who would not require the payment of a commission. Ordway informed Fayette that Mr. Campbell, a real estate man, had been representing Mr. & Mrs. Ernest Handy as prospective purchasers and Fayette had better get in touch with him because of the relationship.

Fayette tried to contact the plaintiff but was unsuccessful. That same day Ordway told the plaintiff that Fayette was looking for him as he had a client, Mrs. Peter Handy, for the Strong Theatre. The plaintiff then informed Ordway that she was his party as he understood she was to make the down payment for Mr. & Mrs. Ernest Handy. The plaintiff then contacted Fayette at the latter's office, where they had a conference. Fayette then contacted Mrs. Peter Handy and after that advised Ordway that, after a conference with the plaintiff and with Mrs. Peter Handy, Campbell, as a real estate broker could not be circumvented, that the relationship was such that he would be entitled to a commission whether the sale was made to Mrs. Peter Handy or to Mr. & Mrs. Ernest Handy. The plaintiff discussed with Fayette the terms of

the sale and about cash of $100,000. and the bank taking a mortgage for $120,000. That same day, August 13, or the next day, the plaintiff took Mrs. Peter Handy to look over the property. Mrs. Ernest Handy and another daughter accompanied them. Mr. Quinn, the co-administrator was there. The lines were shown by him as including only parcel number 1 and the right of way as what they were interested in selling.

Fayette talked with Mr. Lockwood, the president of the bank, about a loan to Mrs. Peter Handy to be secured by a mortgage on the properties that she could mortgage as security for the loan. He also talked with Ordway about the terms of the proposed sale to Mrs. Peter Handy. Ordway informed him that a lease would be required from Mrs. Handy of the present quarters of the Strong Hardware Co. to it for ten years at $7,500. per year and that a cash payment of $100,000 would be required and a mortgage of $120,000 would be satisfactory. After these talks Fayette dictated a letter on August 14 to Ordway making a proposal on behalf of Mrs. Peter Handy to purchase the Strong Building for $220,000., to be paid $100,000 in cash and a mortgage for $120,000 with a lease of the Strong Hardware quarters for ten years at $7,500. per year. There was a condition in the letter that the proposal was subject to the successful completion of negotiations for raising the cash to be paid. This letter was written on the 15th, then delivered to the plaintiff who delivered it to Ordway early that afternoon. Fayette understood that the letter complied with the terms that the bank had set up for the purchase of the property by Mrs. Handy. After the letter was delivered to the plaintiff for delivery to the bank, Lockwood telephoned Fayette and informed him that the bank would approve the loan on Mrs. Handy's properties up to $150,000, to $155,000. Fayette then informed Lockwood that the pending negotiations relating to cash were no longer a condition to the proposal.

Further evidence tended to show that during the evening of August 14, a proposal signed by Richard M. Cody of Montpelier, Vt. to purchase the Strong Building, parcel number 1 on the plan heretofore referred to, plus parcels number 2 and 3 on the plan, was delivered to Ordway at his home. This

proposal was for $220,000 in cash. Mr. Foley, an attorney in Burlington, who had learned through Ordway that the Strong Building was for sale, had previous to this contacted Cody, quoting him a price of $275,000. He later reduced it to $220,000 after notice from Ordway. Only parcel number 1 on the plan with the Strong Building was included in what Foley was informed was to be sold. Cody is the husband of Mrs. Peter Handy's daughter, Lillian. The Cody offer was prepared in Foley's office on August 14 and parcels 2 and 3 on the plan were included in the offer as Cody wanted them. When Foley delivered the Cody proposal to Ordway at his home the evening of August 14, Ordway suggested to Foley that he bring to the bank the next day a memorandum stating what his commission would be. Foley did that stating that his commission would be $10,000 and that according to the offer that would leave a net to the estates of $210,000. The Cody proposal contained a lease provision for five years at $9,000. per year with a renewal period of five years subject to an inflationary clause.

The proposals of Mrs. Peter Handy and Cody were presented to the trust committee of the bank on the afternoon of August 15. Both Lockwood and Ordway were present at the meeting. It was voted to authorize the trust department to enter into an agreement with Cody for his purchase of the Strong Building including lots 1, 2, 3 and 4 on the plan for $220,000. subject to a commission of $10,000. and the lease. A written agreement was prepared and signed by Cody on August 16 and by Ordway for the bank and by Quinn as co-administrator on the 17th. The sale was later completed by the execution and delivery of deeds and the lease. No explanation was made why lot 4 was included when it was not in the Cody proposal. Lots 2, 3 and 4 were worth from $20,000 to $30,000.

Some of the foregoing evidence was contradicted, but as we have seen contradictions and contradictory inferences are for the jury and modifying evidence is to be excluded in considering a motion for a directed verdict.

■ Under count one it was necessary for the plaintiff to show that he produced Mrs. Peter Handy as a person ready,

willing and able to purchase the property listed with him for sale upon the terms proposed by the defendants. *Benoit* v. *Wing*, 117 Vt 477, 478, 94 A2d 237, and cases cited. When considered according to the rules that we have heretofore stated, the evidence was sufficient to take the case to the jury on the issue presented and acting reasonably it could find in the affirmative on that issue. There was no error in overruling the motion for a directed verdict as to count one.

When the case was submitted to the jury, the court, at the suggestion of counsel, submitted, in addition to the general verdicts, the following special verdicts, to be used in case a general verdict was returned for the plaintiff;—"1. The verdict is based upon the offer in behalf of Mrs. Peter Handy. 2. The verdict is based upon the sale to Richard Cody. 3. The verdict is based upon both the offer of Mrs. Peter Handy and the sale to Richard Cody." The jury by its foreman signed the third special verdict. Under these circumstances it is not necessary for us to decide if there was error in not granting the motion for a directed verdict as to count two. The jury could well have based its verdict on count one for the plaintiff on the offer of Mrs. Peter Handy and that the defendants instead of accepting that offer sold to Cody. In view of the special verdict, the defendants have not shown prejudicial error, if any there was, in not granting the motion for a directed verdict as to count two.

■ The defendants in their brief claim that the motion for a directed verdict as to count one should have been granted because the plaintiff was not entitled to a commission unless the sale to Mrs. Peter Handy was completed. On this point they rely upon a statement in the form of a letter to the bank signed by the plaintiff that was an exhibit in the case. The evidence tends to show that it was prepared at the bank and left with Ordway after the plaintiff had delivered to him the offer of Mrs. Handy. An examination of the record discloses that this claim was not made below. It was not a ground of the motion, neither was it mentioned in any request to charge or in any exception to the charge. A trial court may not be put in error on a point not made below. *Valenti* v. *Imperial*

*Assurance Co.*, 107 Vt 65, 71, 176 A 413; *State* v. *Lindsay*, 110 Vt 120, 123, 2 A2d 201, and cases cited.

From what we have said, it is apparent that the motions to set aside the verdict and for judgment for the defendants notwithstanding the verdict were properly denied.

*Judgment affirmed.*