**Richard Kinsley Et Ux v. Lawrence Willis**

[132 A2d 163]

February Term, 1957.

Opinion Filed May 7, 1957.

*Lee E. Emerson* for the defendant.

*Raymond L. Miles* for the plaintiffs.

**Holden, J.** This action was instituted in general assump-

sit by the plaintiffs, husband and wife. The trial by jury resulted in a verdict and judgment for the plaintiffs in the amount of $718.00.

A conspectus of the evidence, lending the greatest support to the result obtained in the trial court, indicates that the defendant, Willis, in 1955 acquired the right to cut, remove and sell the timber standing on the Libby Lot, so-called, in the Town of Montgomery. The defendant thereafter arranged with the plaintiffs to sell them certain logs from this lot. By this arrangement the defendant was to cut and deliver the logs at the roadside, there to be loaded on the plaintiffs' trucks at the agreed price of $40 per thousand feet of spruce, $46 a thousand of pine, and hemlock at $30 a thousand feet. The logs sold were for ultimate delivery by the plaintiffs to Channell & Son, lumber dealers in Canada. The computation of the quantity of logs thus sold was to be made by the Vermont rule according to the mill scale taken at Channell & Son's plant in Canada. The scale to be made by Channell & Son was to control the amount of the defendant's compensation, but pending the result of the computation at the mill, the plaintiffs advanced payments on the logs delivered to them in reliance on tallies prepared by the defendant at the time of cutting. It does not appear that the plaintiffs made any independent computation to satisfy themselves as to the quantity of logs they received from the defendant at the roadside skidways. However, on the defendant's scale taken at the time of chopping, the plaintiffs advanced $2,070.72 by way of six checks during the period November 5 to November 26, 1955. Thereafter, Channell & Son scaled the logs delivered to them by the plaintiffs referable to the same period, and on the basis of their mill scale paid the plaintiffs only $1,312.00, excluding trucking charges. The plaintiffs claimed the difference in these amounts of $758.72 constituted over-payments by them, in that they paid on the defendant's choppers scales for more logs than they received from the defendant, as shown by Channell's mill scale. They supported this claim by introducing into evidence without objection the six checks paid to the defendant (Plaintiffs' Exhibits 1-6) and the six memoranda (Plaintiffs' Exhibits 7-7E), which pur--

ported to show Channel & Son's computation of the logs received at their mill.

The defendant resisted the plaintiffs' recovery on their claim of overpayment by evidence offered to establish that the logging operation on the Libby Lot involved but a single contract of purchase and sale between Channell & Son, buyer, and the defendant, the seller. The evidence established without contradiction that prior to the purchases paid by the plaintiff's checks, the plaintiff, Richard Kinsley, had been a buyer for Channell & Son. It also was undisputed that of the first 9,000 feet of logs cut on the Libby Lot and delivered to the skidway by the defendant, Channell & Son scaled 5080 feet at the roadside and paid the defendant for the amount of logs scaled. This initial purchase by Channell & Son was followed by the six payments by way of the plaintiffs' checks, Plaintiffs' Exhibits 1-6. Payment for the logs picked up by the plaintiffs at the roadside terminated when the plaintiffs experienced financial difficulties about November 26. Thereafter the defendant was paid by Channell & Son for the remainder of the logs cut on the Libby Lot. The plaintiff, Richard Kinsley, continued to load logs brought to the roadside by the defendant and delivered these logs to Channell & Son. Payments received by the defendant subsequent to November 26 were made entirely by Channell & Son. It was the defendant's contention that although he received payments from both Channell & Son and the plaintiffs, Kinsley was acting as agent for Channell & Son throughout the operation. He further contended that he cut some 75,000 feet of soft wood from the job for which he was paid substantially in full by either the plaintiffs or Channell, but that he was not overpaid from the operation considered in its entirety.

The defendant appeals from the verdict and judgment for the plaintiffs, entered by the trial court.

The first exception relied upon by the defendant relates to the ruling of the trial court in the direct examination of the plaintiff, Richard Kinsley. Counsel called the attention of the witness to the six checks given by Mrs. Kinsley to the defendant and to the six memoranda of Channell's mill scale contained in the exhibits 7-7E. The witness was then re-

quested to state whether he had overpaid the defendant. The objection of the defendant that followed pointed out that this question was for the jury. In support of the offered evidence plaintiffs' counsel stated to the court that all he was asking in the case was the difference between the amounts represented by the checks and the amounts indicated in the tallies, plaintiffs' exhibits 7-7E. The court then received the answer of the witness that he had overpaid the defendant about $749.

■ The brief presented by the defendant abandons the only ground stated by his exception, taken at the trial. On this appeal he seeks to establish error on the contention that the evidence admitted was hearsay and a self-serving declaration. On review, errors in the reception of evidence can be predicated only on the fault specified at the time the exception was taken. *Parker* v. *Hoefer*, 118 Vt 1, 14, 100 A2d 434, 38 ALR2d 1216; *State* v. *Teitle*, 117 Vt 190, 200, 90 A2d 562. In any event, the conclusion of the answer was without harm for the same result appeared from the exhibits referred to in the question. These papers were received in evidence without limitation or objection. See *McCarthy's Admr.* v. *Village of Northfield*, 89 Vt 99, 104, 94 A 298; *Gregoire* v. *Willett*, 110 Vt 459, 461, 8 A2d 660. This exception is overruled.

■ Exceptions taken by the defendant on his motion for a directed verdict at the close of the plaintiffs' case were waived by thereafter continuing with the trial. *Hobbs & Son* v. *Grand Trunk Railway Co.*, 93 Vt 392, 397, 108 A 199; *Johnson* v. *Hardware Mutual Casualty Co.*, 108 Vt 269, 274, 187 A 788. This motion was renewed at the conclusion of all the evidence on the same grounds. His renewed motion is presented for review. Consideration of action of the trial court, overruling this motion of the defendant, requires us to test the proof from its source of greatest strength in support of the plaintiffs' claim, free from the effect of modifying evidence and the weight of the testimony. *Shanks* v. *Lavallee*, 118 Vt 433, 434, 111 A2d 808; *Campbell* v. *Howard National Bank*, 118 Vt 182, 183, 103 A2d 96, and cases there cited.

■ The evidence, so considered, fixes the plaintiffs as the separate purchasers of those logs for which they made payments directly to the defendant, and related to the checks dated in the period November 6 to November 26, resulting in the receipt by the defendant of $2070.72. Although it is sometimes difficult to determine whether several transactions constitute one or several contracts, *Bullard* v. *Thorpe.*, 66 Vt 599, 605, 30 A 36, 25 LRA 605, these particular deliveries of logs during the period related to the plaintiffs' checks were capable of being the subject of separate contracts, if that was the intention of the parties concerned. *Hambleton* v. *U. Aja Granite Co.*, 95 Vt 295, 297, 115 A 102. Whether the plaintiffs were, in truth, the purchasers, independent of Channell & Son, for the deliveries during that three weeks, was a critical preliminary question for the jury to decide. Their decision that the plaintiffs were separate contracting buyers would isolate them from the Channell purchases and free Kinsley from his prior agency. The rights and liabilities of the parties would stand separate and apart from the Channell transactions in fixing the obligations and the duties of the respective parties. *Hambleton* v. *U. Aja Granite Co.*, *supra* at 297.

■ The plaintiffs' claim, asserted by the evidence and reaffirmed by their brief submitted on this appeal, is founded on overpayments resulting from independent purchase, advanced to the defendant, and induced by the error of fact contained in the chopper's scale submitted to them by the defendant. It lays the foundation for recovery in general assumpsit. A purchaser who pays his seller for property, under a contract or offer that provides for a price per unit, is entitled to restitution for an overpayment caused by a mistake in the computation of the amount of property actually transferred. Restatement, Restitution, §21, page 94; Williston on Contracts, Revised Edition, §1574 at page 4400; *Turner Falls Lumber Co* v. *Burns*, 71 Vt 354, 358, 45 A 896.

■ The recovery sought is not defeated by an absence of a demand, from the plaintiffs, as claimed by the defendant's motion. The mistake relied on by the plaintiffs was produced by the misrepresentation of the scale of the logs made by the

defendant. The error in computation, on the plaintiffs' theory of the case, is assigned to the defendant payee. If the mistake, honest or otherwise, was caused by the defendant, no demand was necessary. *Holt* v. *Ruleau*, 92 Vt 74, 76, 102 A 934; *Turner Falls Lumber Co.* v. *Burns, supra; Varnum* v. *Highgate*, 65 Vt 416, 420, 26 A 628.

The defendant supported his motion for a directed verdict on the ground that the plaintiffs' case failed to establish that the defendant had neither legal nor equitable right to the overpayments claimed. He invoked the specific holding in *Beauregard* v. *Orleans Trust Co.*, 108 Vt 42, 182 A 182, to support this position. That case involved an important factor that does not appear in the facts of this case. There a proper issue for the jury was framed on the question of the authority by Beauregard, the payor, to the bank as payee, to apply his overpayment to a debt of Beauregard's father. The bank claimed full authority for the application existed. The plaintiff denied such authority. It was held to be a proper question of fact for the jury. In the facts before us, if the plaintiffs made overpayments by way of a separate purchase of the logs, no issue is made in the evidence that the defendant could retain such overpayments by authority from the plaintiffs to apply the proceeds to the purchases of Channell & Son.

■ Once the plaintiffs produced evidence in support of a finding that the defendants had received their money in payment for more logs than the defendant delivered to them, the question of whether the defendant had legal or equitable right to retain the payments became a matter of defense. The plaintiffs' case, in an action in quasi-contract, is not burdened with excluding all possible equities and rights in the defendant. In *State* v. *St. Johnsbury*, 59 Vt 332, 337, 10 A 531, 533, the Court stated: "When the fact is found that the defendant has the plaintiff's money, if he can show neither legal nor equitable ground for keeping it, the law creates the privity and the promise." This statement is included in a quotation in *Beauregard* v. *Orleans Trust Co., supra,* as correctly stating the principle involved.

110

■ The final reason assigned to support the defendant's motion for a directed verdict is laid on the basis that the evidence shows that Kinsley was acting as agent at the time the checks were given, and his agency precludes recovery. Again, the burden of establishing agency was on the defendant. The burden of proof of the fact of agency rests on the party who asserts its existence. *Camp* v. *Barber,* 87 Vt 235, 240, 88 A 812; *Scott, Admr.* v. *Bradford National Bank,* 107 Vt 226, 232, 179 A 149. Whether the defendant successfully sustained the burden which he thus assumed, against the evidence of the plaintiffs in support of their theory of a separate and independent purchase, presented a proper issue for the jury.

■ The evidence in this cause supports the conflicting claims of both sides of the litigation. It afforded justification for reasonable and differing conclusions by the jury, under proper instructions. This pattern of the proof justified the commitment of the cause to the jury for decision. *Shields* v. *Vermont Mutual Fire Insurance Co.,* 102 Vt 224, 237, 147 A 352.

At the outset of the instructions to the jury, the court stated the substance of the plaintiffs' claim to the effect that they were seeking to recover overpayments that resulted from the differential in the scale made at the logging job by the defendant and the mill scale made by Channell which controlled the compensation for the logs delivered. A little later in the course of its instructions, the court charged the jury that the case submitted for their decision was an action for breach of contract and pointed out that the plaintiffs' right to a recovery was predicated upon the failure of the defendant to perform his undertaking with the plaintiffs under an express contract. The defendant excepted to this aspect of the instructions and asserted, in his exception, that breach of a specific contract was not an issue in the case.

■ While the plaintiffs' claim of a separate contract lies at the foundation of their standing as independent purchasers of the defendant's logs and thereby tends to eliminate the previous agency between Kinsley and Channell & Son,

this action, as it appears from the evidence, is not for the breach of an express promise made by specific contract. It is based on the fictitious promise of quasi contract, implied without reference to the intentions of either of the parties. It relies on a claimed mistake of the defendant, in which the plaintiffs did not participate. The plaintiffs' recovery cannot stand on the obligation created by the parties by way of an express contract but on the obligation created by law from the application of principles of equity and good conscience. *Beauregard* v. *Orleans Trust Co.*, and *State* v. *St. Johnsbury*, supra; *Morse* v. *Kenney*, 87 Vt 445, 449, 89 A 865. The trial court was in error in permitting the jury to award damages to the plaintiffs on a theory of law not justified by the evidence. *Newman* v. *Kendall*, 103 Vt 421, 424, 154 A 662. The error is not cured by the preceding statements of the court which spoke of the complaint in terms of a quasi contractual obligation, for two inconsistent instructions open the way for the jury to follow either course indicated. *Farmers' Exchange* v. *Brown* 106 Vt 65, 69, 169 A 906; *Tyrell* v. *Prudential Insurance Co.*, 109 Vt 6, 20, 192 A 184, 115 ALR 392.

The court also charged: "Now if there was an agency relationship, a privity between Channell and Kinsley, then I charge you that the law would not allow Kinsley to go against Willis and force him to go against Channell. If there was no agency and they were independent of one another, and there was a bona fide agreement between Kinsley and Willis that he bought a certain number of logs and Willis had allowed those logs to go to Channell without the agency, then Kinsley can recover against Willis and Willis can get his own recovery from Channell." To this instruction the defendant was allowed an exception on the ground "the Court by such a broad charge, allows the jury to draw the broad inference that if there is no agency, Kinsley is entitled to recover."

 The statement of the court to which the exception is directed was in effect a binding instruction that called for a plaintiffs' verdict if the jury should find no agency obtained between Kinsley and Channell. Liability on the defendant would not attach to Kinsley's freedom from Channell's agency

alone. As previously pointed out, to justify the plaintiffs' recovery, it was essential that the jury reach the further determination that the defendant had been overpaid by reason of his own mistaken computation. By fixing liability on the absence of agency alone, the court excluded from the jury's consideration factors vital and necessary to obligate the defendant. The charge conveyed the cause to the jury on an incomplete and incorrect statement of the issues material to a rightful decision. The defendant's exceptions to the instructions are sustained. *Morse* v. *Ward*, 102 Vt 433, 436, 150 A 132; *Stoddard Bros.* v. *Howard*, 101 Vt 1, 5, 139 A 776; *Rowell* v. *Town of Vershire*, 62 Vt 405, 410, 19 A 990, 8 LRA 708.

The merits of the remaining exceptions taken by the defendant to the charge and to the action of the court in refusing his motion to set aside the verdict are determined by what has preceded in the review of questions presented by earlier exceptions.

*Judgment reversed and cause remanded.*