### George H. O'Brien Et Al v. Elizabeth D. Dewey Et Als

[143 A2d 130]

January Term, 1958.

Opinion Filed March 5, 1958.

Opinion on Motion for Reargument Filed May 26, 1958.

*Norton Barber* and *John P. Morrissey* for the defendants.

*Manfred W. Ehrich, Jr.* for the plaintiffs.

**Adams, J.** This is an action of tort for trespass to recover damages to real property for the wrongful cutting of trees and to recover treble damages under V. S. 47, §8403. The action was brought against six defendants. Trial was by jury. A verdict was directed for two of the defendants and a general verdict was returned by the jury against the other four defendants. A special verdict was returned answering in the negative the question,—if these four defendants had satisfied the jury by a fair balance of the evidence that in cutting such trees as they might find were cut upon the plaintiffs' land, the defendants acted through mistake, or had good reason to believe the trees so cut were upon their own land. There was a judgment on the verdict for treble damages. The case comes here on exceptions of these four defendants to the denial of their motions for a directed verdict, to set aside the verdicts, for a judgment not withstanding the verdicts, to the charge and

failure to charge. When the word "defendants" is hereinafter used it will refer to these four only.

The plaintiffs claim title to the real estate in question and occupied by them as a home in the town of Woodford, described in plaintiffs' exhibit 4, a warranty deed from Alta E. and Howard C. Davis to George H. O'Brien, Jr. and Marie C. O'Brien, dated April 29, 1946 as follows:—

> "Commencing at a point in the north line of the main highway leading from Bennington to Wilmington, which point is the southwest corner of the parcel herein conveyed; thence running northeasterly along the easterly side of the highway known as Slab City Road to the southwest corner of the lands of the Draper Corporation; thence running easterly along the south line of the lands of said Draper Corporation to the southeast corner of the lands of said Draper Corporation; thence running northerly along the east line of the lands of the Draper Corporation to the south line of the river; thence running easterly along the south line of the bank of the river to the northwest corner of the lands now owned by Arthur Chambers; thence running southerly along the west line of said Chambers land to the north line of said main highway; thence running westerly along the north line of said main highway to the place of beginning; excepting from and out of the above described piece of land that portion which was conveyed by Karl T. Spofford to the State of Vermont, which deed is recorded in Book 18, page 754 of the land records of the Town of Woodford."

The main highway referred to in the foregoing description is route 9 leading from Bennington to Brattleboro and from various maps and exhibits in the case said highway, where it bounds the land in question, runs generally northwest and southeast. It is a hard surface road and the premises are located about four miles from Bennington. This highway was more often spoken of by various witnesses and the attorneys as running north and south and the river referred to in the description was also spoken of as running in the same general

direction. This river is known as the City Stream and it flows from the Brattleboro direction towards Bennington so down stream is towards Bennington. We shall refer to it in this opinion as the stream. It should be mentioned that there were no previous deeds of the premises in evidence that described the premises by metes and bounds. The other deeds that were exhibits described the property as "Ferndale" and referred to previous deeds only.

Although the boundary description in the foregoing deed described the premises as bounded on the south by the main highway, because of the maps used as exhibits and the testimony of the witnesses, we shall in this opinion speak of it as bounded on the west by the main highway, the so-called Slab City Road as being to the north, the stream to the east and the Chambers land to the south.

The controversy here stems from a dispute in regard to the title to what the parties term an island containing about two acres of land and located on the southerly or up-stream part of the premises described in the plaintiff's deed. The dispute is about the location on the ground of the southerly boundary of the premises and that part bounded by the westerly bank of the stream.

The testimony bearing upon this feature of the case was very conflicting. We will mention only some of it. The testimony on behalf of the plaintiffs tended to show that the Draper Corporation and Dewey formerly owned land bordering the stream on the east and during a survey made to establish their division line a post was set in 1949 near the east bank of the stream and marked with the word Draper on one side, Dewey on another and O'Brien on another side. This marked the division line point of beginning and also the Chambers and O'Brien corner, these latter two being the same. There was testimony that those who did the surveying felt that O'Brien owned up to the Chambers corner. A witness for the plaintiffs testified that he had lived southerly and next to the Chambers property for twenty-seven years; that the Chambers property was ninety feet wide and extended from the road to the stream and was between his land and the O'Brien land.

There was testimony from various witnesses called by the plaintiffs that the stream channel had always been back next to the mountain and that in the flood of 1927 the stream overflowed, made a channel nearer the road and washed out some of the road. The testimony showed that repairs were made and an embankment built so that the stream was diverted back into the old and main channel. There was testimony that the same thing happened in 1938 and again in 1949 and since then some water had flowed in this new channel but only when there was high water.

The evidence showed that because of the new channel caused by the floods and high water it makes an island, as the parties term it, which contains about two acres and is situated between the old channel and the new channel where some water flows during high water.

The plaintiffs claim and their evidence tended to show that their southerly line and the adjoining northerly line of the Chambers land is southerly of this island and that the line mentioned in their deed as "along the south bank of the river to the northwest corner of the lands now owned by Arthur Chambers" is along the old or main channel of the stream as it existed in 1946, the date of their deed. They therefore claimed that they owned the island and the land between it and the easterly side of route 9, the main highway mentioned as one bound in their deed.

The defendants claimed and their evidence tended to show that the southerly line of the plaintiffs' land, known as "Ferndale", as pointed out in 1932 by a person who previously owned it, now deceased, starts from a yellow birch tree on the westerly side of route 9 and extends across the northerly tip of the so-called island to an elm tree across and near the east bank of the stream and thence northerly along the east bank of the stream to the road. That road is the one designated in the deed to the plaintiffs as the Slab City Road. They also claimed and their evidence tended to show that the bound mentioned in the plaintiffs' deed as "along the south line of the bank of the river to the northwest corner of lands now owned by Arthur Chambers" was the west bank of the stream it made at the time of the floods and is its most westerly channel. They therefore claimed

that the plaintiffs do not own any part of the island or land southerly of the line extending from the yellow birch tree to the elm tree on the east bank of the stream.

■ In passing upon a defendant's motion for a directed verdict, the evidence must be taken in the light most favorable to the plaintiff and the ruling of the trial court sustained if the evidence fairly and reasonably tends to support the verdict. The effect of modifying evidence is to be excluded. Contradictions and contradictory inferences are for the jury to resolve. The tendency of the evidence and not its weight is to be considered. If there is any substantial evidence fairly and reasonably tending to support the plaintiffs' claim, the question is for the jury. *Campbell* v. *Howard National Bank*, 118 Vt 182, 183-4, 103 A2d 96, and cases cited therein. Where there is conflicting testimony the question is for the jury. *Manley* v. *Delaware & Hudson Canal Co.*, 69 Vt 101, 103, 37 A 279. Where testimony is conflicting the weight is for the jury. *Gentes* v. *St. Peter*, 105 Vt 103, 105, 163 A 569. The weight of the evidence and the credibility of the witnesses are for the trier of the facts to determine and all conflicts are to be resolved against the excepting party. *Taylor* v. *Henderson & Smith*, 112 Vt 107, 111, 22 A2d 318.

Tested by the foregoing rules, it is apparent that the ownership of and title to the so-called island was for the jury. There was no error in denying the motion for a directed verdict.

■ The defendants have mentioned in their brief a claimed error in the court's charge. All they say about it is that the charge on the particular point mentioned was in error. They do not point out any exception to it and we fail to find any in the record. There is but one exception to the charge as given and it does not cover that part of the charge about which complaint is now made. An instruction not excepted to is not for consideration on appeal. *Loomis* v. *Abelson*, 101 Vt 459, 463, 144 A 378.

■■ The defendants brief their exceptions to the failure of the court to charge their requests numbered 2 and 3. Both of these have to do with the survey and division line between

the Draper Corporation and Dewey and the post with the name of the plaintiffs thereon. The court in its charge instructed the jury that "any inferences arising from the fact that Draper's employees marked a post in the Dewey-Draper division line with O'Brien's name are not to be considered by you in arriving at your decision." This substantially complied with both requests which was all that was required. A literal compliance is not required. A court may select its own language for instructions and the extent of elaboration of points is within the discretion of the court. *Mc Kenna* v. *McDonald*, 111 Vt 60, 63, 10 A2d 208. Furthermore, the requests contain binding instructions that omitted and ignored evidence favorable to the plaintiffs in regard to their southerly line that we have mentioned in our discussion of the motion for a directed verdict. *Levy* v. *Hall*, 119 Vt 143, 151, 120 A2d 568. The charge on the subject matter of the request was, if anything, more favorable to the defendants than the requested instructions. For this reason, also, there was no error in not giving them in their exact wording. *Roberts* v. *Gray*, 119 Vt 153, 159, 122 A2d 855.

The defendants' motion to set aside the verdict is based upon three grounds which are in substance, (1), that there is no evidence to support the verdict, (2), that the verdict is contrary to the weight of the evidence and (3), that the damages assessed by the jury are excessive.

■■ The first ground presents a question of law which is subject to review. If there is any evidence fairly and reasonably tending to justify the verdict the motion cannot properly be granted on this ground. The evidence must be taken in the light most favorable to the prevailing party, for the motion in this respect is the same in nature and substance as a motion for a directed verdict. *Belock* v. *State Mutual Fire Ins. Co.*, 106 Vt 435, 439-440, 175 A 19; *Long* v. *Leonard*, 113 Vt 258, 263, 32 A2d 679. What we have said in regard to the motion for a directed verdict disposes of the motion on this ground adversely to the defendants.

■ The second ground of the motion is addressed to the discretion of the trial court and its action thereon is not revis-

able unless it appears that there has been an abuse or withholding of discretion. *Belock* v. *State Mutual Fire Ins. Co.,* *supra,* 106 Vt at page 439; *Laferriere* v. *Saliba,* 119 Vt 25, 30, 117 A2d 380.

 It is the province of the jury to settle questions of fact; and when the evidence is such that different minds might fairly and reasonably come to different conclusions thereon, the trial court has no right to disturb the finding of the jury, although its view of the facts might have inclined it to find the other way. The verdict is not lightly to be disregarded and should only be set aside when the judgment of the trial court tells it that to allow the verdict to stand would bring about an injustice. When the discretionary ground of the motion to set aside the verdict depends upon the evidence, it is the duty of the trial court to consider the evidence in the light most favorable to the verdict. The exercise of discretion in passing upon the question of the weight of the evidence is for the trial court alone and we have no discretionary power in the matter. In this Court the only question for determination on review of a discretionary ruling is whether the trial court has abused its discretion. *Russell* v. *Pilger,* 113 Vt 537, 550-552, 37 A2d 403.

 Considering the evidence to which we have referred, it cannot be said that the evidence against the verdict so preponderates as to leave no reasonable basis upon which it can stand. Consequently we cannot say that the trial court exercised its discretion on grounds or for reasons clearly untenable, or to an extent clearly unreasonable, which is the recognized test for an abuse of discretion. *Macauley* v. *Hyde,* 114 Vt 198, 206, 42 A2d 482.

We now take up the third ground of the motion, that the damages awarded by the jury are excessive. The declaration alleged damages to the real estate by the cutting down, removal and carrying away of the trees consisting of pine, spruce and hemlock and causing damage by the manner in which it was done and that the trees had a substantial value as shade and ornamental trees. It was agreed that there were 62 trees cut.

The plaintiffs introduced evidence in regard to the value of the premises before and after the cutting, the resulting

difference being from $1,500 to $2,000. There was also evidence on behalf of the plaintiffs that the estimated stumpage several years before the cutting was 18,000 feet and worth $25 per thousand; that it was a very good grade of timber, consisting of trees that were large, some 2 1/2 to 3 feet in diameter and running up in good shape, some of them having 40 feet of usable timber with no branches below fifteen feet. It was a beautiful stand of trees. A truck could have been driven in there after the logs and it was nice in there with a lot of pine needles. There was further evidence that before the trees were cut the place was nice, cool and shady and used by the plaintiffs and former owners of the premises and their children and also used by the public with cars for a picnic spot; that the island contained about two acres worth close to $2,000 before the cutting and not worth very much now, approximately $5 to $10 per acre. The plaintiffs introduced pictures showing the stumps left after the cutting with brush and butts left on the ground. There was evidence that the stumpage of the timber sold was 13,055 feet of white pine at $16 per thousand feet; 1,860 feet of spruce at $16 and 1,530 feet of hemlock at $10 and that the distance from the mill to which it was taken was 4 1/2 to 5 miles on a hard surface road and that it was sold to the same parties as other stumpage that was about 13 miles from the mill and part of that distance was over logging roads.

In *Kilby* v. *Erwin*, 84 Vt 266, 78 A 1021, the defendant was charged with setting fires on his own land which he negligently left unattended and suffered to spread upon and injure the plaintiff's sugar place. The trial court charged the jury that the plaintiff was entitled to recover the damages he had sustained in the injury to his farm—what the farm had been damaged, not particularly for him, but as a farm; that the measure of damages was the reduction in the worth of the farm.

In the opinion at page 273 this Court mentioned that the elements of damage vary with the kind, condition, location and use of the trees; young and growing trees; trees that have reached their maturity; trees valuable only for wood and timber; trees mainly and solely valuable for their annual products; trees because of their location are valuable mainly as woodland

growth; trees that have no direct commercial value, but which add to the market value of a place and the comfort of its owner by providing shade and ornamentation. At page 274 it is stated, "It is now generally held that in all cases where the suit is for the injury to the realty, and a recovery of the value of the trees as property separate from the soil would not give the plaintiff his full damage, the true measure of damage is the difference between the value of the land as it was before the injury and its value immediately after the injury. * * * there are many cases that refer to the farm or the estate of which the injured tract was a part." This Court then stated that, "In view of the nature of the case, we think that the charge of the court as before stated was correct." That case is very much in point here. See also *Exr. Judevine's Estate* v. *Trustees of Caledonia County Grammar School*, 93 Vt 220, 242, 106 A 836; *Chase* v. *Hoosac Tunnel & Wilmington R. R. Co.*, 85 Vt 60, 62-63, 81 A 236.

In the instant case the court charged the jury that if the plaintiffs are entitled to recover the verdict "should be for a sum in money as represents the damages to the plaintiffs' land by the cutting of the timber which would be the value of the trees cut, whether value as ornamental or shade trees or as timber, as you find the fact to be at the time when and the place where they were cut as a part of the land. The plaintiffs are not in any event entitled to recover the value of manufactured lumber or lumber at the mill or any speculative value but the actual damage to the land, the difference between the value of the land before the trees were cut and its value after its cutting; what did the trees contribute to the value of the property that was destroyed by the cutting and carrying away of the trees?"

The court further instructed the jury that interest is not recoverable as such in an action of tort, but if the jury saw fit, it might include in its verdict, a further sum in the nature of interest for the delay from the time of the cutting up to the present time, at a rate of not more than the equivalent of simple interest at six percent per annum on the actual damages. No exceptions were taken by the defendants to any of the foregoing instructions in regard to the damages.

It is apparent that, upon the evidence that we have cited and its consideration in accordance with the law on damages and the charge of the court and the law that we have cited applicable to the motions for a directed verdict and to set aside the verdict, the general verdict of $2,185 as damages was proper and there was no error in the denial of the motion to set it aside as excessive. No question has been briefed by the defendants in regard to the special verdict by virtue of which the court trebled the damages.

The defendants made a further motion that judgment be entered for them notwithstanding the verdict on the ground that the plaintiffs "have no cause of action because there is no evidence showing that they owned the part of the island where the alleged trespass and cutting took place." What we have heretofore said disposes of this motion adversely to the defendants.

*There is no error. Judgment affirmed.*

## On Motion For Reargument

**Adams, J.** By points I and II in their motion and brief for reargument, the defendants claim that we misapprehended certain evidence and the effect of the court's charge thereon pertaining to the amount of land conveyed to the plaintiffs by the description in their deed. They reiterate matters contained in their original brief. They point to nothing therein that was not fully considered by this Court. Moreover, it is all evidence in their favor that they wish considered and it is not for consideration in passing upon a motion for a directed verdict. They, by this method, attempt to show that the evidence pertaining to the land and the boundaries thereof that was conveyed to the plaintiffs was not conflicting which is contrary to the record and the evidence as shown by the opinion.

The defendants claim by point III that this Court misunderstood their exceptions to the charge and failure to charge. They said in their original brief and now repeat that their exception applied to the court's charge, "that a deed from the Deweys to a third party could not operate to convey to the plaintiffs anything but did amount to a possible inconsistent

statement which the jury could consider as to the location of the plaintiffs' corner." We said in the opinion that there was but one exception to the charge and it did not cover that part of the charge about which complaint was made.

We now quote from the record. "The defendants except to the charge of the court that the statements by the defendants Dewey and McCullough and Killian in the division line agreement between them could be considered by the jury as tending to show any corner or line of the plaintiffs' land." The brief of the defendants mentions "a deed from the Deweys to some third party." The charge of the trial court mentions "a deed from the defendants to some third party." There were two other defendants in addition to the Deweys. The exception instead of mentioning a "deed" specifies "the division line agreement." Also, there is nothing stated in the exception as taken that mentions inconsistent statements or a charge pertaining thereto and to which the defendants claim the exception applied. The exception did not apprise the trial court or this Court of what the defendants claim for it.

The defendants also claim that we overlooked and misapprehended their request to charge No. 2 and that it is in the same category as their exception to the charge. We said in the opinion that this request and their request No. 3 pertained to the same subject matter and that the charge substantially complied with both requests. It is not shown that we overlooked or misapprehended anything in connection therewith.

*No ground for reargument appears. The motion is denied. Let full entry go down.*