# Ernest W. Gibson, Jr. v. The Mackin Construction Co., Inc.

[187 A.2d 337]

September Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed January 2, 1963

*Gibson & Dier* for the plaintiff.

*Edward A. John* for the defendant.

**Shangraw, J.** The defendant carried out a blasting operation in connection with a road project some three hundred feet from plaintiff's residence. Contending that this blasting had been so negligently carried out as to cause damage to his home, the plaintiff brought this action. The jury returned a verdict for the defendant, and the plaintiff appealed to this Court. Two questions are presented. The first relates to the exclusion of documentary evidence offered for impeachment of a witness. The second relates to the charge of the trial court with respect to causation of the damage for which recovery is sought.

The plaintiff complains that the logbook of the dynamiter, a Mr. Wood, was excluded by the trial court, although the defendant did not object to its reception into evidence. This is borne out by the record. However unorthodox this procedure may have been, error cannot be predicated upon it unless the plaintiff establishes that he was prejudiced thereby. *Towle* v. *St. Albans Publishing Co.,* 122 Vt. 134, 139, 165 A.2d 363.

The episode occurred in the midst of the trial. The witness, George A. Wood, was on the stand testifying as the dynamiter who had set off the blasts complained of. Wood had testified that he had a book in which he kept records of his dynamite jobs. The plaintiff offered the book, for purposes of impeachment, to show that there were no blasting records, other than the job in question, in it. The court, of its own motion, ruled that for that purpose it would be excluded.

It is the position of the plaintiff that the testimony of witness Wood was crucial to the defense presented to the action. From this it is claimed that, since the ruling of the court prevented the demonstration of an inconsistency in that testimony, the plaintiff was prejudiced in his attempt to attack the credibility of an essential witness for the defense.

A careful examination of the testimony of the witness Wood indicates that the assertion by the plaintiff that an inconsistency exists is not well founded. Wood did testify that he kept a log on every job that he did near a house. He said he kept the records in a blaster's log, day by day, one after the other. He was asked concerning the job he had done just prior to the Mackin job, as to whether its record came next before the Mackin job in his book. His answer was, "No. I simply open the book, take out a page and write in it, mark it. That's it." Later on in his examination, the following question and answer occur:

Q. How many other blasting jobs are represented by a page in that particular log book?

A. I don't know. Not too many because as you observe there've been a lot of pages taken out where I am working with a State engineer and at the end of the day I give them the record. They take care of it themselves.

At the time the book was offered, the following colloquy took place between the court and the plaintiff's attorney:

Mr. Dier: The purpose of our offering the record was to show the absence of any record in the book itself not to show this particular job.

Court: You mean you are trying to impeach the witness?

Mr. Dier: In effect, yes.

Court: For that purpose we will exclude it.

Mr. Dier: May I make an offer? We have offered the book for two reasons, one in connection with the witness' testimony, this book represents the record of every job he has done as a blaster since, we assume, since he got the book; that on several occasions, but he hasn't testified how many, he has removed pages from the book. The book itself will show how many pages have been removed. He testified he spends 90% of his time on blasting jobs. This book we are offering to show he hasn't kept a record of all the jobs he has done.

The court then stated that on the basis of the offer the book was being excluded.

■ Neither in his offer nor in this Court has the plaintiff advanced any claim based on the information in the proposed exhibit relating to the blasting on the Mackin job. Rather, he confines his exception to credibility based on the absence of any records of other blasting jobs in the book. As can be seen from the quoted testimony, the evidence of the witness Wood, with respect to the contents of the blasting record book, does not come up to the offer about it made by the plaintiff. By the exclusion of the log book, plaintiff urges that he was prevented from attacking the credibility of the witness, Wood. Faced with a proposition so dubiously supported, on an issue outside the main concern of the present litigation, it was within the discretion of the court to limit collateral excursions urged solely to attack credibility. *State v. Lapan,* 101 Vt. 124, 134, 141 Atl. 686; *State* v. *Teitle,* 117 Vt. 190, 196, 90 A.2d 562.

Plaintiff's house was erected about 1897, and purchased by him in 1937. During the period from 1941 to 1945 the house was at times closed, and, when closed, the heat discontinued during the winter months. It was conceded during the trial that certain cracks or imperfections were present in the side walls of the house prior to the blasting operations of the defendant. During the trial the claimed damage was confined to that alleged to have been caused by the blasting, nothing more. Plaintiff's evidence was to the effect that the cost of repairs to the house, exclusive of preexisting damage, would be $10,822. The defendant's evidence of like effect was $5,900.

The blasting operations of the defendant occurred on or about October 17, 1960. Evidence was introduced by the defendant to the

effect that in the fall of 1960 there had been jet aircraft activity in the area, and claimed "sonic boom" might have been a causative factor for the damage to the house. No witness expressed the opinion that this activity was a concurring or efficient cause. In fact, the transcript disclosed affirmative evidence to the contrary. As to damage by jet aircraft, concurring, efficient, or otherwise, this was sheer speculation, and properly not charged or referred to in the court's charge. Furthermore, neither party claimed any shortage in the charge in this respect.

The plaintiff urges as grounds for reversal the court's use in its charge of the phrase "sole cause of the damage." He claims that the language of the trial court misled the jury into believing that the plantiff had to show that the defendant's negligence was responsible for all the damage existing in the plaintiff's house in order to hold the defendant liable at all. Stated differently, that under the charge the jury were bound to find the defendant not liable if there was damage to the plaintiff's house that was not caused by the defendant's negligence. This Court is bound to construe the record reasonably. *McGann* v. *Capital Bank & Trust Co.*, 117 Vt. 179, 183, 89 A.2d 123.

The keynote of the plaintiff's opening statement to the jury was a claim for damages caused by the negligent blasting operations of the defendant. This claim was repeated on several occasions during this statement. No claim was made by the plaintiff of concurrent negligence on the part of anything or anybody with the defendant as a joint tort-feasor. No claim was made by the plaintiff during the trial of combined causes which produced the damage complained of. The clearcut issue developed during the trial was whether the defendant was negligent in its blasting operations and, if so, the damage resulting therefrom. This was the theory upon which the plaintiff based his claim, and the case tried. Therefore, the defendant could be held responsible only for that damage for which its negligence was the cause.

At the conclusion of the evidence, and prior to the charge, the court inquired of plaintiff's counsel in chambers as to his views concerning the rule of damage and received this reply, "The damage that was done to the house as a result of the blast. This is a tort case."

We shall now refer to, and quote material excerpts from the court's charge. In commenting upon the burden of proof, the court in its

first part of the charge stated, "The burden is on the plaintiff to thus prove (1) negligence on the part of the defendant's agents, servants or employees in the use and firing of explosives on Western Avenue on or about October 17, 1960, and second, damage to plaintiff's house, which damage was caused directly and proximately by reason of such negligence;" further, that "So here, the mere fact that the defendant was using dynamite with which it did some blasting on Western Avenue does not in and of itself prove negligence."

The court went on and commented upon dynamite as a dangerous agency, and the degree of caution and care required in the use of dangerous explosives, including notice to be given property owners within the range of its blast. Then followed this statement, "The second principal issue for you to decide is whether any damage was caused to the Gibson house and if so whether it proximately resulted from the blasting by the defendant." In referring to proximate cause the court added, "So here, even if the defendant was negligent as charged, there can be no recovery unless there was damage to the Gibson house; and such negligence was the direct, proximate and sole cause of any such damage."

Again referring to preponderance of the evidence, the court stated, "If you find by a preponderance of the evidence that the defendant was negligent; that plaintiff's house was damaged and that negligence was the direct and sole cause of damage to the house, your verdict will be for the plaintiff." "If on the other hand you find by the weight of the evidence that defendant was not negligent or if it was that such negligence was not the direct and sole cause of the damage to plaintiff's house your verdict will be for the defendant."

In its concluding remarks relating to damages the court went on to say, "If your verdict is for the plaintiff you will then proceed to the question of damages and must determine the extent of the injury to the plaintiff's house directly caused by the blasting." "The measure of damages is limited to the amount of money to repair the damage and restore the house to the same or as good but not a better condition as it was before the blasting."

■ Error is not to be read into the charge of a trial judge by isolating small segments of it. It is not to be considered piecemeal, but with an eye on its general content. *State* v. *Blair,* 118 Vt. 81, 97, 99

A.2d 677. Quoting from *In re Moxley's Will*, 103 Vt. 100, at page 114, 152 Atl. 713, "An instruction claimed to be erroneous must be read in the light of what is elsewhere said upon the subject." As stated in *Fassett* v. *Town of Roxbury*, 55 Vt. 552, at page 556, a charge "should be taken as a whole, and although it may contain some expressions that, taken alone, would be error, yet if as a whole it breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it, it ought to stand." *State* v. *Coburn*, 122 Vt. 102, 110, 165 A.2d 349; *Laferriere* v. *Saliba*, 119 Vt. 25, 28, 29, 117 A.2d 380; *Gould* v. *Gould*, 110 Vt. 324, 329, 6 A.2d 24; *In re Moxley's Will, supra*, 114.

With the overall picture in mind, the jury could not have failed to understand that they were determining whether or not there was damage from the dynamite used, and only that damage; otherwise the whole submission was pointless. To hold otherwise would be placing a strained interpretation on the court's charge, and one which a jury of reasonable persons could not entertain. We are convinced that the record fails to demonstrate that the jury was misled, or went astray.

*Judgment affirmed.*

**Barney, J.,** dissenting. Unlike the majority, I find prejudicial error in the trial court's charge. I must also reject, on principle, resort to remarks of counsel to arrive at the jury's probable understanding of the court's language. Nor can the difficulty be resolved by reference to the rule that the charge must be viewed as a whole. It is just such a view that reveals that the jury was given two inconsistent rules on causation, as relating to the damage in evidence.

In this case the difficulty is only partly one of selecting the efficient cause of damage. Under the evidence, there were different kinds of damage. It was important for this to be kept before the jury to avoid misunderstanding. At the beginning of the charge, the court briefly and correctly outlined the burden of the plaintiff, inferentially but not specifically limiting the damage issue to that caused by the defendant's negligence. Later on in the charge the court undertook to develop the issue of causation. When the court went on to charge, as it did, that the plaintiff had the burden of establishing that the defendant's negligence was the direct and sole cause of damage to the house, it then became incumbent upon the court to make it clear that this test

was applicable only to damage to the house resulting from the blasting. This was not done. Our Court has ruled that to say one thing is the sole cause of an accident necessarily excludes all other causes. *Higgins, Admr.* v. *Metzger,* 101 Vt. 285, 294, 143 Atl. 394. Such language is appropriate where there is an issue of contributory negligence, but not here.

Conceding that, when it came to the issue of damages, the court correctly limited the jury's consideration to the injury directly caused by the blasting, we cannot assume confusion was dispelled. The jury might well understand, since they were not directed otherwise, that the test of liability might differ from the measure of damages. With a defendant's verdict in the case, we have nothing to indicate the actual basis on which the plaintiff's claim was rejected. Conceivably, it could have been because the plaintiff was unable to show that the defendant was "solely" responsible for all the damage existing in the house.

Thus the jury was left in the position of having two rules for determining liability before it. One excused the defendant if there was any damage to the plaintiff's house not caused by the defendant's negligence. The other, correctly, would hold the defendant liable for any of the damage which was caused by its negligence. In such cases, where inconsistent instructions are given, it is presumed that the jury felt at liberty to follow either the correct or the incorrect. *Kinsley* v. *Willis,* 120 Vt. 103, 111, 132 A.2d 163; *Farmer's Exchange* v. *Brown,* 106 Vt. 65, 69, 169 Atl. 906. There is no presumption that the jury selected the right course. The fact that the court may have, at one point, charged correctly, will not overcome the presumed effect of an erroneous charge, if properly challenged. *Tyrrell* v. *Prudential Ins. Co.,* 109 Vt. 6, 20, 192 Atl. 184, 115 A.L.R. 392.

At the very least, in this case, there is fair ground for saying the jury may have been misled. *Morse* v. *Ward,* 102 Vt. 433, 436, 150 Atl. 132. It seems clear that the principles of these cases apply here, and that they require reversal. I would so rule.

I am authorized to say that Mr. Justice Holden joins in this dissent.

**Hulburd, C. J.,** concurring. The dissent reduces the question of the court's charge to one of inconsistent instructions. This is an oversimplification of the problem. There was no inconsistency unless one feels impelled to read it into what the trial judge said. At

the outset, he told the jury that the plaintiff was seeking to recover for damages caused by negligent blasting. Having stated this once, was it necessary that he keep repeating himself? Should he have said, "damage *caused by blasting*" whenever damage was mentioned?

The situation before the jury was that the plaintiff's house had existing damage in it before ever there was any blasting at all. The plaintiff argues that the court gave the jury to understand that the plaintiff could have no recovery unless the damage which occurred before the blasting was caused by the blasting. The mere statement of this proposition shows how strained is the plaintiff's construction of the court's charge. I entertain no fear that the jury placed such an astonishing misinterpretation upon the trial court's language. Prejudicial error has not been shown.