Shirley McCrea, Administratrix of the Estate of
Robert A. Monroe v. State of Vermont

[419 A.2d 318]

No. 228-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed July 28, 1980

*Robert S. Burke* and *Brian J. Grearson* of *Richard E. Davis Associates, Inc.*, Barre, for Plaintiff.

*Robinson E. Keyes* and *Leonard F. Wing, Jr.*, of *Ryan Smith & Carbine, Ltd.*, Rutland, for State.

*Harry A. Black* of *Black & Plante, Inc.*, White River Junction, for Bourdon's, Inc.

**Hill, J.** In March of 1974, plaintiff's intestate, Robert A. Monroe, died as a result of a fire he set to a mattress while confined in the Rutland Community Correctional Center. Plaintiff subsequently brought this action claiming that Monroe's death was due to the negligence of the State of Vermont in its operation of the correctional center. She contended that at the time of confinement Monroe exhibited suicidal tendencies that were not recognized and handled appropriately by the State; that the cell in which Monroe was confined was unsafe; that the mattress in the cell was not properly fire-rated; that the center had inadequate fire protection equipment; and that the employees of the center were improperly trained in fire evacuation procedures. The State answered denying negligence on its part, and alleging, alternatively, that decedent's negligence was greater than any on the part of the State. The State also filed a third-party complaint, V.R.C.P. 14, against Bourdon's, Inc., alleging that Bourdon's had manufactured and sold to the State the allegedly improperly fire-rated mattress and that should the State be held liable it was entitled to indemnification from Bourdon's.

At the close of all the evidence third-party defendant Bourdon's motion for a directed verdict was granted, and a judgment to that effect was entered. The case was then submitted to the jury, who returned with a verdict that Monroe was

65% negligent and the State was 35% negligent. Plaintiff's motions to set aside the verdict and for a new trial were denied, and the present appeal was filed. The State filed a cross-appeal, again raising its indemnification claim against Bourdon's.

Plaintiff raises three grounds of error: (1) the trial court erred when it failed to give plaintiff's requested instruction on the doctrine of last clear chance; (2) the trial court erred when it failed to inform plaintiff which instructions would be given as required by V.R.C.P. 51(b); and (3) the jury did not spend sufficient time examining the evidence introduced in the case. Since we believe these claims are without merit, we affirm the judgment of the trial court. And, since the State in its cross-appeal seeks relief only if a new trial is granted, the issues raised by that appeal need not be addressed.

■ Prior to the court's charge, plaintiff filed a request for instructions, asking that the following charge be given to the jury:

> If you find from the evidence that the inability of the persons in charge of the plaintiff to remove him from the cell resulted from inadequate fire protection devices, or inadequate training, or inadequate fire fighting equipment, or any combination of these, then you may not consider the plaintiff guilty of contributory negligence.

The court, without informing either counsel of its intended charge, subsequently instructed the jury as to the legal issues involved in the case, but failed to give the above-quoted request. No objection was made by plaintiff before the jury retired.

V.R.C.P. 51(b) provides:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to

consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

It is well settled that claims regarding jury instructions must be raised in and ruled on by the trial court before they are ripe for appellate review. See, e.g., *Palmisano* v. *Townsend*, 136 Vt. 372, 374, 392 A.2d 393, 395 (1978); *Paton* v. *Sawyer*, 134 Vt. 598, 602–03, 370 A.2d 215, 218 (1976). Therefore, plaintiff's failure to object to the trial court's refusal to give her requested instruction precludes our review.

██ Furthermore, we reject plaintiff's contentions that the trial court's failure to inform counsel of its intended charge pursuant to V.R.C.P. 51(b) relieved her of the burden of objecting, or, alternatively, that the court's failure to so inform counsel was reversible error per se. While the trial court's failure to inform counsel as required by Rule 51(b) was erroneous, it does not, in our opinion, require reversal of the judgment below. Rule 51(b) requires the court to inform counsel of its proposed instructions prior to closing arguments, so they can intelligibly argue the facts in light of the law to be charged to the jury, and so they will be alerted to make proper objections to the proposed charge. *Fraser* v. *Choiniere*, 133 Vt. 631, 634, 350 A.2d 755, 757 (1975). The rule is not, however, meant to be a trap for the judge who inadvertently fails to inform counsel. *Finkle* v. *New York, N.H. & H. R.R.*, 26 F.R.D. 9, 10 (D. Conn. 1960). Where, as it appears here, a judge fails to inform counsel due to inadvertence, cf. *Fraser* v. *Choiniere, supra* (purposeful refusal to inform), an appellate court will reverse only if a party has been prejudiced by the failure. *Williams* v. *Independent News Co.*, 485 F.2d 1099, 1106 (3d Cir. 1973); *Hardigg* v. *Inglett*, 250 F.2d 895, 897 (4th Cir. 1957); *Levin* v. *Joseph E. Seagram & Sons, Inc.*, 158 F.2d 55, 58 (7th Cir. 1946), *cert. denied*, 330 U.S. 835 (1947).

We do not believe that the trial court's failure to inform counsel prejudiced plaintiff's ability to object to the denial of her request to charge. At the close of the court's instructions to the jury, a bench conference was held between counsel and the trial judge. And, although the subject of the conference was plaintiff's requests to charge, counsel gave no indication

that he was unsatisfied with the charge given. Rule 51(b) imposes an affirmative obligation both upon the trial judge and upon the parties. The failure of the trial judge to carry out his obligation does not in our opinion excuse the parties from carrying out theirs, especially when the failure on the trial court's part was the result of inadvertence rather than of conscious design.[1]

■■ Nor do we believe that the trial court's failure prejudiced plaintiff's ability to argue intelligibly to the jury. Plaintiff admits in her brief that counsel argued to the jury the very point of law on which the trial court failed to instruct. In essence, plaintiff had the benefit of arguing to the jury her theory of law when the trial court had already declined to so charge the jury. That plaintiff was not prejudiced is clear when it is realized that not only was her request an incorrect statement of the doctrine of last clear chance, but it is evident from the facts of the case that the doctrine was not applicable.[2] Where, as here, there is a perilous situation created by the negligence of both parties, but the defendant, as well as the plaintiff, does not have the ability to avert the accident by exercising presently available means, a charge on the doctrine is inapposite. See *Lachance v. Myers*, 98 Vt. 498, 505, 129 A. 172, 174 (1925). Accordingly, not only should plaintiff's request have been denied, but the trial court should not have allowed her to argue her legal theory to the jury.

Plaintiff's last claim of error is that the verdict was illconsidered, since the jury did not spend a sufficient amount of time deliberating. This claim is premised on the facts that although the trial was eight days long, the jury began their deliberations the day before Thanksgiving and returned with a verdict within one to two hours.

---

[1] It should be noted that this was not a case where an instruction requested by an opposing party was given and counsel needed time to determine whether an objection was proper. Rather, plaintiff's request was refused. And although he did not know before the charge was read that the request would not be given, he knew so immediately thereafter. At that point, having requested the denied instruction, he should have known whether an objection was proper.

[2] This assumes, without deciding, that the doctrine of last clear chance has survived the adoption of comparative negligence in Vermont. See 12 V.S.A. § 1036.

522

 Although this Court has had the opportunity to comment on the length of time spent in arriving at a jury verdict in the context of a criminal prosecution, it has not prescribed any standard for civil cases. Nevertheless, we take this occasion to make it clear that there is no compelling reason why there should be a different rule for a civil case. See Annot., 91 A.L.R.2d 1220 (1963).

In *State* v. *Lumbra,* 122 Vt. 467, 177 A.2d 356 (1962), Chief Justice Hulburd made the following observation:

> The law does not attempt to prescribe the length of time which a jury should take to arrive at a verdict. Indeed it has been held that a jury may render a verdict without retiring. Of course, the trial court may—and doubtless should—cause the jury to reconsider its verdict if it considers that their decision is so hasty as to indicate, in the circumstances, either a flippant disregard or a perfunctory performance of their duties.

*Id.* at 469–70, 177 A.2d at 358 (citation omitted). Seven years later, in *State* v. *Morrill,* 127 Vt. 506, 253 A.2d 142 (1969), Justice Keyser added to the rule announced in the *Lumbra* case:

> Generally, it can be said that the strength of the evidence is one of the controlling factors on the duration of the deliberation of the jury. There is no law which requires a jury to deliberate any longer than may be necessary to agree upon a verdict. And jurors undoubtedly begin their deliberation process during the progress of the trial. Furthermore, the historical inviolability and independence of the jury tend to make inquiry into the manner of reaching a verdict improper.

*Id.* at 509, 253 A.2d at 144 (citations omitted).

 With these standards in mind, we find it difficult to see how the jury's verdict was ill-considered. There is nothing to indicate that the jury performed its duty other than with complete sobriety and respect for its legal obligation. While the trial was an extended one, the issues were rather straightforward, and we are not prepared to say that they could not have been resolved in the amount of time spent deliberating.

Furthermore, there is no reason to suppose that the jury failed to examine carefully the evidence in reaching its verdict. Accordingly, the trial court's refusal to set aside the verdict or grant a new trial on this ground was proper.

*Affirmed.*