Carl Perkins, Executor of the Estate of Dorothy Perkins,
and Carl Perkins, Individually v. Windsor Hospital Corp.
d/b/a Mt. Ascutney Hospital and Health Center,
Dale Gephart, M.D., and Kelley's Drugstore, Inc.

[455 A.2d 810]

No. 387-80

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed December 1, 1982

*Gary Randall Brown,* Woodstock, for Plaintiffs-Appellants.

*Kiel & Boylan, Clifford M. Miller* (On the Brief), Springfield, for Defendants-Appellees.

*Theriault & Joslin, P.C.,* Montpelier, for Defendant-Appellee Kelley's Drugstore.

**Barney, C.J.** This is a medical malpractice action. In the fall of 1976, plaintiff Dorothy Perkins underwent an elective cholecystectomy at Mt. Ascutney Hospital in Windsor, Vermont. Prior to her release the defendant physician issued plaintiff a prescription for the drug Flagyl.[1] The drug was prescribed in an effort to discover the cause of atypical cells, disclosed in plaintiff's routine pap smear test.

Plaintiff filled the prescription at the defendant pharmacy in Windsor, Vermont. Some time later, according to plaintiff's testimony, she ingested the initial prescribed dosage of Flagyl and suffered severe adverse reactions. She was rushed to the hospital emergency room where she was treated for chest pains and shortness of breath. Following discharge, plaintiff continued to experience chest pains and related medical problems.

In September, 1978, plaintiff brought suit against the defendant physician alleging he was negligent in having prescribed Flagyl, and that he had failed to obtain plaintiff's informed consent to the Flagyl treatment.[2] The complaint also named the hospital as a party defendant, apparently on the basis of respondeat superior. Plaintiff filed an additional

---

[1] Flagyl is a brand name for the chemical metronidazole.

[2] Mrs. Perkins' husband Carl Perkins is also a plaintiff in this action. Mrs. Perkins is now deceased and her representative has been substituted as a party. V.R.A.P. 43(a).

complaint in August, 1979, alleging that the defendant pharmacy negligently prepared, dispensed and labelled the Flagyl prescription.

The defendant hospital's motion to dismiss the complaint for failure to state a claim as to it was granted, and the case against the physician and pharmacy was tried before a jury. The jury returned a general verdict for the defendants and answers to written interrogatories finding neither defendant negligent. Plaintiff appeals from the ensuing judgment, raising numerous grounds for reversal.

## I. Defendant Physician

### A. Informed Consent

Plaintiff first claims in her brief that the trial court erred in refusing her request to charge 12 V.S.A. § 1909, Vermont's informed consent statute. Count II of plaintiff's original complaint alleged that the defendant physician failed to obtain plaintiff's informed consent to the treatment in question. She also submitted proposed instructions, seeking to have the court give a charge on § 1909. Moreover, plaintiff complied with the requirement of V.R.C.P. 51(b) that the party "[state] distinctly the matter to which he objects and the grounds of his objection." The issue has therefore been preserved for appellate review. *Sanville* v. *Williams*, 138 Vt. 498, 501, 418 A.2d 860, 862 (1980); *Palmisano* v. *Townsend*, 136 Vt. 372, 374–75, 392 A.2d 393, 395 (1978).

The standards pertaining to informed consent established by this Court in *Small* v. *Gifford Memorial Hospital*, 133 Vt. 552, 557, 349 A.2d 703, 706–07 (1975), have, since that decision was rendered, been modified by legislation. 12 V.S.A. § 1909, entitled "Limitation of medical malpractice action based on lack of informed consent," became effective on April 7, 1976. 1975, No. 250 (Adj. Sess.), § 3. Section 1909 reads in pertinent part:

(a) For the purpose of this section "lack of informed consent" means:

(1) The failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable

risks and benefits involved as a reasonable medical prac-
titioner under similar circumstances would have dis-
closed, in a manner permitting the patient to make a
knowledgeable evaluation . . . .

It is against this statutory language that the trial judge's in-
structions must be measured.

It is clear from the transcript that plaintiff's claim of lack
of informed consent centered around (1) whether the de-
fendant physician provided plaintiff with any warning con-
cerning the dangers of taking Flagyl after ingesting alcoholic
beverage; and (2) whether, assuming such a warning was
given, it was adequate in light of plaintiff's infirmities.[3] Al-
though the trial judge charged extensively on the elements of
medical malpractice, see 12 V.S.A. § 1908, he refused plain-
tiff's request to charge the elements of informed consent as
set forth in § 1909 stating: "There is no competent medical
evidence in the record that would support that charge." We
disagree with this assessment of the state of the evidence
below.

The cornerstone of plaintiff's suit was the claim that she
had not knowingly and intelligently consented to Flagyl treat-
ment because she had not been made aware of the reasonably
foreseeable risks, in particular the potential adverse reaction
when combined with alcohol. In response to this allegation,
the defendant physician testified that although he did not re-
call actually warning plaintiff of this risk, it nevertheless was
his "custom" to give such an oral warning. Plaintiff's expert
testified that even if the physician had given his customary
warning it would not have provided plaintiff with sufficient
information concerning the dangers to permit plaintiff to
make a knowledgeable evaluation to undergo the treatment.

This testimony in itself was enough to require that
informed consent be fully charged. See 12 V.S.A. § 1909(e).
Instead, while the charge as given did contain some of the
elements of informed consent, they were sparse at best, and
considered in context with the charge as a whole, did nothing
by express reference to this issue or otherwise, to place the

---

[3] Plaintiff Dorothy Perkins had a history of mental illness, alcoholism
and physical problems.

question before the jury. Even assuming these references might have alerted a person trained in the law of the subject, we conclude they were not sufficient, either as a directive to a jury of laymen that the factual issue was theirs to determine, or as providing a clear understanding of the elements for their consideration. Accordingly, we hold that plaintiff was effectively deprived of her right to have the jury determine the adequacy of the information furnished by the physician.

## B. Medical Negligence

Count I of plaintiff's complaint alleged that the physician's decision to prescribe Flagyl to plaintiff constituted professional medical negligence. See 12 V.S.A. § 1908. The jury disagreed, answering a written interrogatory with the finding of no negligence on his part.

Plaintiff asserts, however, that judgment in favor of the defendants as to the medical negligence claim must be reversed because the trial court erred in using assumption of risk language when instructing the jury on the defendants' affirmative defense of comparative negligence. In *Sunday* v. *Stratton Corp.*, 136 Vt. 293, 304, 390 A.2d 398, 404 (1978), we stated that "use of assumption of risk language is irrelevant and confusing in a jury instruction on comparative negligence." The parties were entitled to a jury free from irrelevancies and possible confusion. While mindful that, under V.R.C.P. 51(b), the procedures for preserving objections to jury instructions are limited by requiring an objection "before the jury retires to consider its verdict," *Collette* v. *Bousley*, 141 Vt. 373, 374, 449 A.2d 936, 937 (1982), we nonetheless agree with plaintiff that the instruction given was erroneous. In charging the jury, the trial court blended the instructions, creating an overlap between the negligence of the doctor in prescribing Flagyl in the first place, the warnings, if any, to Mrs. Perkins of potential harmful side effects and her assumption of risk. The interrogatories given the jury further emphasized this meld by asking only if Dr. Gephart was negligent, and not separating the two causes of action. Thus, while ordinarily the mere inclusion of the assumption of risk language might not have been reversible error, and this is particularly true here since it was not formally objected to

as required by V.R.C.P. 51 (b), it becomes so from the unfortunate interweaving of those concepts.

In other words, the plaintiff correctly noted his objections to, among other things, the failure to give an informed consent instruction and the confusion of contributory negligence with the alleged warnings by the doctor or pharmacist. Formal objection was not made specifically to the words "assumed the risk" included in the negligence charge. Thus, under our long-established rule, review of the irrelevant assumption of risk language is not undertaken except to prevent a failure of justice. See *McCrea* v. *State,* 138 Vt. 517, 519–20, 419 A.2d 318, 319 (1980) ; 2B W. Barron & A. Holtzoff, Federal Practice and Procedure § 1106 (C. Wright ed. 1961). As we unanimously agree, the lack of an informed consent charge was error and was objected to. Unlike the minority opinion, however, we will not preclude ourselves from examining the totality of the charge merely because there was no formal objection to three irrelevant words.

A brief examination of the charge given highlights our concerns and supports our conclusion that the error requires reversal. The court told the jury to turn their attention "to the specific legal principles which [they] must apply in determining whether or not the defendant, Doctor Gephart, was or was not negligent." The explanation of the legal principles, however, immediately became muddled:

> The claim of negligence against Doctor Gephart relates to his act of prescribing the drug Flagyl. Your first task is to decide what standard of care is required of physicians in Doctor Gephart's type of practice in this general area with respect to the need to warn when prescribing Flagyl for this purpose you may and should consider the testimony of all the physicians who testified.

The court then went on to outline very briefly the jury's task of weighing the evidence before it against the standard of care applicable.

> If you find that Doctor Gephart did not meet this standard of care, then you may find he was negligent and is responsible for any damages that were the proximate result of his negligence. If you also find, however, that Mrs.

Perkins had been warned of potential harmful effects, if any, of Flagyl, by any other individual, you must find that Mrs. Perkins assumed the risk of which she had been warned and that Doctor Gephart is not legally responsible for any damages.

■ It is clear that, what started as an instruction on negligent prescription, immediately became an instruction "with respect to a need to warn." Compounding the error, the court charged that, if the jury should find the existence of a warning "by any other individual," then Dr. Gephart would not be legally responsible for any damages. This incorrectly states the law. As we have already noted, 12 V.S.A. § 1909(a) requires that "the person providing the professional treatment disclose the risks. Not only is this instruction confusing and erroneous, it is also strongly tilted in favor of Dr. Gephart. *Monti* v. *Town of Northfield,* 135 Vt. 97, 99, 369 A.2d 1373, 1375 (1977). See also *Gibson* v. *Mackin Construction Co.,* 123 Vt. 287, 292–93, 187 A.2d 337, 340–41 (1963) (Barney, J., dissenting).

## II. Defendant Hospital

Plaintiff also presents a valid argument for reversal with respect to the dismissal of the complaint against Mt. Ascutney Hospital. Her original complaint sought to impute the alleged negligence of the defendant physician to the hospital on the basis of respondeat superior. The hospital moved, unsuccessfully, for summary judgment on the ground that the physician was an independent contractor. On the day of jury drawing, the hospital moved to dismiss the complaint for failure to state a claim as to which relief can be granted. V.R.C.P. 12(b)(6). The court granted this motion without giving reasons for its decision.

Plaintiff promptly moved for reconsideration of the dismissal and sought to amend the complaint against the defendant hospital. This motion was denied, the court stating: "The proposed amendments would cause prejudice to the defendants . . . because they state an entirely new cause of action and are out of time." The amendments, if allowed, would have clarified the respondeat superior claim and alleged direct negligence on the part of the hospital.

We find that the court erred in refusing to permit the requested amendments; reversal of judgment in favor of the defendant hospital is therefore required.

■■ V.R.C.P. 15(a) directs the trial courts that "leave [to amend] shall be freely given when justice so requires." Moreover, the lower courts must be mindful of the "historical Vermont tradition of liberality in the allowance of amendments to the pleadings." *Tracy* v. *Vinton Motors, Inc.*, 130 Vt. 512, 513, 296 A.2d 269, 271 (1972). Nonetheless, we will reverse a trial court's ruling on a motion for leave to amend only if the ruling is an abuse of discretion. *Gilwee* v. *Town of Barre,* 138 Vt. 109, 111, 412 A.2d 300, 301 (1980). See also 6 C. Wright & A. Miller, Federal Practice and Procedure § 1484 (1971).

■■ It appears that the court below denied plaintiff's motion to amend in part because it stated a new cause of action—direct negligence on the part of the defendant hospital. This was error. V.R.C.P. 15 directs the trial court to consider not whether the amendment raises a new cause of action but "whether the just and expeditious disposition of the controversy between the parties will be advanced by permitting the amendment." 1A W. Barron & A. Holtzoff, Federal Practice and Procedure § 448, at 753 (C. Wright ed. 1960). The trial court should have considered the propriety of plaintiff's motion to amend by examining several factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. See *Forman* v. *Davis,* 371 U.S. 178, 182 (1962). None of these factors support the denial of plaintiff's motion to amend.

The second reason advanced by the court in support of its denial of plaintiff's motion for leave to amend was that the amendments were out of time. By this it appears that the trial court concluded that the amendments were barred by the applicable statute of limitations, 12 V.S.A. § 521, since made more than three years after the occurrence of the alleged negligence. This, too, was error.

■ V.R.C.P. 15(c) governs the relation back of amendments, stating: "Whenever the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or

occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Here the proposed amendments were designed to accomplish two goals (1) clarify the claim under respondeat superior, and (2) allege direct negligence against the hospital. There is no question regarding the relation back of the amendments to the respondeat superior claim. Thus it was error to deny that amendment as "out of time."

█ It was also error to refuse to allow the direct negligence amendment. The negligence claim arose out of the conduct or occurrence set forth in the original complaint. The defendant hospital had notice from the beginning of this action that plaintiff sought to hold it responsible for the harm she allegedly suffered as a result of the Flagyl treatment. We find the hospital's assertion that it would be prejudiced if the amendment is permitted unpersuasive in light of the fact that the hospital was a party defendant up to the actual day of jury drawing. Any surprise engendered by allowance of the proposed amendment could have been eliminated by requesting a continuance of the trial.

### III. The Pharmacy

The sole issue presented by plaintiff's appeal from judgment in favor of the defendant pharmacy is whether the court erred in refusing to charge the jury on the practice of pharmacy, as defined by 26 V.S.A. § 2022(6). We answer this question in the negative.

█ Chapter 36 of Title 26 is designed to "promote, preserve and protect the public health, safety and welfare by and through the effective control and regulation of the practice of pharmacy." 26 V.S.A. § 2021. It is a general regulatory chapter, not a statutory codification of the tort liability of pharmacists. In view of the court's extensive instruction on the elements of pharmacist's liability, it was not error to refuse to charge § 2022(6).

*Judgment in favor of defendant Dale Gephart, M.D., as to the informed consent and negligence counts reversed and remanded. Judgment in favor of Windsor Hospital Corp. d/b/a Mt. Ascutney Hospital and Health Center reversed and re-*

*manded. Judgment in favor of Kelley's Drugstore, Inc., affirmed.*

**Peck, J.** Concurring in part and dissenting in part. I concur with the majority on the issues relating to informed consent, the hospital, and the pharmacy. I agree also that the charge to the jury on informed consent was erroneous because it embodies irrelevant assumption of risk language. I disagree strongly, however, that the charge as given constitutes reversible error. In my view it is most unfortunate that plaintiff is to be given "another bite of the apple," and the physician subjected to further travail because of a minor error which is highly technical at best. The possibility of the charge having "confused" the jury is so remote and improbable as to be virtually nonexistent. Accordingly, I am compelled reluctantly to dissent from the reversal of the jury's verdict in favor of the physician on the medical negligence count.

First, plaintiff failed to object to the irrelevant part of the charge before the case was submitted to the jury as required by V.R.C.P. 51(b). This Court has ruled on numberless occasions that only those claims relating to jury instructions which are raised in the trial court will be considered on appeal. A failure to do so "constitutes a waiver of the claim of error." *State* v. *Joyce,* 139 Vt. 638, 640, 433 A.2d 271, 272–73 (1981); *McCrea* v. *State,* 138 Vt. 517, 520, 419 A.2d 318, 319 (1980). I do not understand why the majority has failed to apply this sound and well-established rule, and has created in its place, relying on what I view as thin if lengthy rationalizing, a legal specter that will serve as a precedent and come back to haunt us. The majority opinion does recognize the rule, but thereupon departs from it. I believe this departure will require some uncomfortable if not embarrassing explaining away in future cases.

I disagree strongly with the majority view that the instruction may have confused the jury by "overlapping" the negligence and informed consent issues. The negligence count related very clearly throughout to the *prescription* of Flagyl, not to whether plaintiff gave her informed consent to the treatment. As I read the court's instructions, the majority's argument exaggerates their possible impact beyond any reasonable likelihood of fact. In my view the conclusion is

reached through a labored rationalization, seeking to accomplish what the majority views as the ends of justice. I am apprehensive, however, that such an admittedly desirable result in any litigation is not being served here.

Assuming, for purposes of argument however, that the majority is correct in postulating a thoroughly bewildered jury, it concludes that when such a possibility emerges, "all bets are off"; all rules are out the window. A party then has no further responsibilities to object, or take any other steps to afford the court an opportunity to correct an error. He may sit back and do nothing, or rely on some vague, broad, and subsequent action, and still preserve the question for review in the event the verdict is not to his liking. In effect, I believe the claim is presented here for the first time, and the claimed error is far from being so glaring or egregious to justify our sua sponte review, particularly where, in doing so, we are treating plaintiff with an exception to our timely-objection rule.

Even errors of constitutional magnitude may not be for consideration on appeal if not raised below, *Cleveland* v. *Department of Employment Security,* 138 Vt. 208, 211, 414 A.2d 1157, 1159 (1980), and this is so even in criminal cases, *State* v. *Patnaude,* 140 Vt. 361, 368, 438 A.2d 402, 404 (1981), where the rights of a person accused of a crime are rigidly protected. It is, therefore, all the more difficult to comprehend the radical departure from these fundamentals by the majority. The rationale escapes me entirely.

Secondly, whatever error there was in charging the jury, it was manifestly harmless within the meaning of V.R.C.P. 61. The jury found the defendant physician was not negligent in prescribing Flagyl. How then can it *possibly* be said that the jury was confused or misled by the assumption of risk language? It is as obvious as Cyrano's nose that the jury never even reached comparative negligence or assumption of risk, let alone having been confused by the latter. Only if there had been a finding of negligence in the first instance would comparative negligence have entered the picture, and only in that case might there have been some arguable possibility of confusion with assumption of risk, as remote and speculative as even that would be in this case. But the ultimate irony of this argument, it seems to me, lies in the fact

that, assuming confusion did result, it could have worked only in favor of the plaintiff, since it would have provided broader grounds on which to base a finding of negligence by adding informed consent as an element. Very clearly, in my view, plaintiff has failed totally to show the slightest degree of prejudice resulting from this most trivial and irrelevant of errors; the burden was upon her to do so. *Paradis* v. *Kirby*, 138 Vt. 524, 528, 418 A.2d 863, 865 (1980).

Further, the majority, for no reason apparent to me, has turned away from our obligation to affirm the result reached in the trial court when it is reasonably possible, and it is certainly more than just that here. Appellate courts traditionally go to some lengths to affirm the results reached below, if it is reasonably possible to do so. Rarely, however, in my experience, do courts go to the tenuous lengths represented by the majority position here to accomplish a reversal when an affirmance is, in my judgment, clearly called for, and the more obvious and direct. When it becomes necessary to protest too much, the validity of the result is at least suspect and should be examined carefully.

The majority has elected to raise an error (not attributable in any way to the defendant affected thereby), which I view as trivial and nonprejudicial, to the level of reversible error, thereby giving plaintiff another roll of the dice. I cannot sit idly by and countenance, without comment, a majority view which I consider to be palpably and egregiously wrong under some of our own most fundamental and firmly established rules of appellate review. I would affirm the judgment in favor of the defendant physician on the negligence count.