Reynolds v. Brousseau, No. S1153-01 CnC  (Norton, J., May 25, 2005)


[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT     SUPERIOR COURT
Chittenden County, ss.:     Docket No. S1153-01 CnC


REYNOLDS

v.

BROSSEAU


ENTRY


        This is a motion for reconsideration of the court's earlier entry allowing defendants to amend their counterclaim to include a claim for reimbursement.  Reynolds, trustee for the estate of Frank Irish, opposes the amendment on the grounds that it comes too late in the case and at great disadvantage to her.

        This case concerns a very lucrative parcel of land that belonged to Frank Irish.  Once a dairy farm, the roughly twenty-six acre parcel is now prime commercial and residential real estate in the heart of South Burlington.  In 1996, Brosseau, Irish's brother-in-law, and Smejkal, his partner, approached Irish about selling his property.  The parties signed an initial agreement that this court in a previous entry ruled as unenforceable.  Reynolds v. Brosseau, No. S1153-01 CnC (Katz, J., Dec. 29, 2003).

From filings in this case dating back to 2002, Brosseau and Smejkal have claimed that they paid Irish up to $40,000 as consideration for this agreement. Payments came, according to the defendants, at various points in their relationship, including $10,000 when the parties signed and whenever Irish needed money for taxes or because of his failing health. Irish came to dispute the nature of the relationship and even his signature on the agreement. In 2001, he brought this case to have the agreement declared unenforceable. It is not clear from the filings if he ever disputed or characterized the alleged payments he may have received from Brosseau and Smejkal. After years of declining health, Frank Irish died in 2003. His remaining interests in this case are represented by Reynolds, his sister and trustee for the estate. In August 2004, following the court's rejection of their motion to reconsider, the defendants moved to amend their counterclaim to include a cause of action for a return of the $40,000. The court granted this motion, and this claim is their sole remaining cause of action.[*] Plaintiff has moved to reconsider the amendment.

In deciding a motion to amend, the court has fairly wide discretion. Perkins v. Windsor Hosp. Corp., 142 Vt. 305, 313 (1982). Rule 15 requires that motions to amend be granted liberally, but that does not mean automatically. V.R.C.P. 15(a); 6 C. Wright, et al., Federal Practice and Procedure § 1474 (2d ed. 1990). The court's analysis must include consideration of four factors that the Vermont Supreme Court has adopted to facilitate the court's implementation of the underlying policy purpose, the just and expedient disposition of the controversy. Perkins, 142 Vt. at 313. The four factors are "(1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." Id.

To the question of prejudice, plaintiff argues that she is greatly prejudiced by this late amendment because the person best suited to rebut or explain defendants' claims is dead. Frank Irish, she argues, was the witness best suited to testify as to whether or not he received any payments from the

---

[*] Defendants argue in their August 4, 2004 motion that they are entitled to specific performance for the agreement, but the courts previous entries specifically deny that agreement's enforceability. Specific performance is not a potential remedy at this time.

defendants and to state the purpose for which he understood them to be given. Apart from the undertones of bad faith in plaintiff's argument, her point is that defendants waited too long and that this claim could have and should have been made as an alternate request for relief at the beginning of the case when defendants' requested specific performance. In this light, plaintiff's argument comes against one of the most common uses of rule 15(a) amendments, to amend defective pleadings. 6 Wright, supra, at § 1474. It is true that defendants could have included this cause of action in their original counterclaim pleadings, but mere failure to do so is not a reason to refuse amendment now.

Considering the prejudice plaintiff suffers because of Irish's death, there is no evidence to support the accusation that defendants purposefully withheld the cause of action until this moment. Oversight and mistake are possible explanations; trial strategy may also be a possible cause, but defendants' possible right money that they gave Irish money in expectation is also compelling. To refuse amendment would require the court to ignore the fact that defendants have a colorable claim to the money.

As to the issue of whether plaintiff might have benefitted from Irish's testimony, it is far from certain. Irish could only testify about what he understood his relationship with Brosseau and Smejkal to be and what he received from them. As to the first, there is evidence from Irish's depositions to illustrate his understanding of his relationship with the defendants. As to the second, plaintiff may use bank records, receipts, and other such evidence to refute or confirm defendants' evidence as to when any money was received or not received. These may not be ideal evidentiary circumstances, but they show that the plaintiff is far from paralyzed in presenting her case.

The big question here is really whether this motion to amend has come too late and caused undue delay. This case was originally filed in September 2001. It has outlasted the original plaintiff and has survived its original cause of action, namely to end any claims Brosseau and Smejkal might have against the Irish land. The remaining questions are fairly discrete, when, if ever, did the defendants give Irish money and do they have a right to have that money returned.

The allegation that the defendants gave Irish money in the amount of up to $40,000 was well-established early on in this case. While defendants have see-sawed as to whether to pursue it as a claim of action, its appearance as a claim is not a complete surprise to the plaintiff. Cf. 6 Wright, supra, at § 1487, at 632 (discussing lack of surprise). In fact, this amendment is best characterized as the assertion of a alternative theory of recovery that could have been included in the counter-claim but was not. At this point in the litigation, the parties should have conducted discovery about these remaining issues since they are so closely tied to the agreement.

It would be unfair to freeze out defendants' last claim if there is some merit to it, a point plaintiff disputes. In her last argument against amendment, plaintiff argues that the evidence is inconclusive and defendants will be unable to prove their case. Specifically, plaintiff refers to 12 V.S.A. § 1602, the so-called dead man's statute, which will block defendants from testifying about their dealings with Irish. Certainly, this statute has the potential to weaken the defendants' case, but it does not appear to fatal. Under § 1603, defendants would be blocked from testifying about their understanding of the land agreement and presumably their intent when sending Irish money, but this would not preclude them from entering other evidence such as cancelled checks, time-lines of payments, and other circumstantial evidence that may carry their burden. Plaintiff's arguments are valid but their points go to the weight of the evidence for summary judgment or trial rather than the possibility of evidence and the viability of the claim.

Based on the foregoing, defendants' motion to amend is affirmed.

Dated at Burlington, Vermont_____, 2005.


_____
Judge