Lackey v. Cmty. Health Care, Inc., No. 169-3-07 Wmcv (Wesley, J., Feb. 18, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**                    **WINDHAM SUPERIOR COURT**
**WINDHAM COUNTY**                      **DOCKET NO. 169-3-07 Wmcv**


**ERIN LACKEY, individually and in her**
**capacity as administratrix of the**
**ESTATE OF KAYLA LACKEY,**
    **Plaintiff,**

**v.**

**COMMUNITY HEALTH CARE, INC.,**
**and WALTER D. SLOWINSKI, M.D.,**
    **Defendants.**


## OPINION & ORDER
## GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT

**Introduction**

On April 4, 2005, Stephen Fairchild, a recovering heroin addict, veered his truck into oncoming traffic on Route 9, and drove head-on into a truck driven by Plaintiff Erin Lackey. Fairchild and Plaintiff's daughter, Kayla Lackey, died as a result of the collision, and Plaintiff suffered injuries. On March 28, 2007, Plaintiff brought this action against Defendant Community Health Care, Inc. (CHC), a methadone clinic, and Defendant Walter D. Slowinski, M.D., Fairchild's treating physician.[1] Plaintiff alleges Defendants provided negligent care to Fairchild, and in doing so endangered the public by prescribing a combination of drugs including: Methadone, Trazodone, and Klonopin, which made it unsafe for Fairchild to drive.

Plaintiff has now moved to amend her Complaint to add a claim for punitive damages. CHC responds the Motion should be denied because it is: (1) futile, (2) has been unduly delayed, and (3) will be prejudicial to CHC.

---

[1] Defendant Slowinski has since been dismissed by stipulation.

For the followings reasons, Plaintiff's Motion to Amend is **GRANTED**, subject to the condition that Plaintiff shall pay one half of CHC's reasonable expenses incurred as a result of re-deposing Plaintiff's experts on the issue of punitive damages.

**Standard for Motion to Amend**

When a party must seek permission to amend a pleading, leave to do so should be liberally granted when justice so requires. See V.R.C.P. 15(a). In determining whether to allow an amendment, trial courts consider factors including: (1) whether the amendment would be futile, (2) whether the request was unduly delayed, and (3) whether the amendment would cause prejudice to the opposing party. *Perkins v. Windsor Hosp. Corp.*, 142 Vt. 305, 313 (1982).

**Futility**

CHC first argues the conduct alleged by Plaintiff does not approach the high threshold required to state a cause of action for punitive damages, thus the motion to amend should be denied as being futile.

Punitive damages are permitted upon evidence of malice. *Bolsta v. Johnson*, 176 Vt. 602, 602 (2004). Malice is shown by "conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights." *DeYoung v. Ruggiero*, 185 Vt. 267, 278 (2009) (internal quotes omitted). To establish malice, the conduct in question must be accompanied by some evidence of bad motive, as mere "indifference attributable to negligence" lacks the egregiousness normally associated with punitive damages. See *Brueckner v. Norwich Univ.*, 169 Vt. 118, 132 (1999) (defendant university's "inaction and inattention" to issue of hazing did not warrant punitive damages). While bad motive is most apparent when a defendant acts on personal animus toward a particular plaintiff, the concept is not limited to cases of personal ill will. See,

2

e.g., *DeYoung*, 185 Vt. at 279 (bad motive established where attorney defrauded client for sole purpose of securing financial gain).

In support of punitive damages here, Plaintiff first points to a sequence of events which, according to Plaintiff, tends to show (1) that Fairchild was a high-risk patient, and (2) that CHC inadequately supervised his treatment to a wanton and reckless degree. As delineated by the motion, these events are described as follows:

1. May, 1999 – Fairchild was in an alcohol, related roll over accident;
2. September, 2001 – Fairchild passed out on the side of the road;
3. July, 2002 – An employer reported that given the medications Fairchild was taking, it was not safe for Fairchild to operate machines;
4. February, 2003 – Fairchild involved in a motor vehicle accident;
5. January 16, 2004 – Fairchild reports receiving numerous speeding tickets;
6. January 16, 2004 – Fairchild drives to the Defendant CHC Health Care, Inc. clinic while his license was suspended;
7. July 1, 2004 – Fairchild stormed out of a psychiatrist's office;
8. August 4, 2004 – Fairchild smashed up his car;
9. November 2004 – Fairchild failed to return a methadone bottle – a requirement of the Defendant CHC Health Care, Inc. for continued take home privileges;
10. December, 2004 – Fairchild reported that his benzodiazepine medications were lost or stolen – which he had done on at least four previous occasions, a classic sign of patient addiction to this medication that <u>slows reaction time and impairs driving skills</u>;
11. December, 2004 – Fairchild engaged in threatening behavior;
12. January 13, 2005 – 2 ½ months prior to the collision of April 4, 2005, Fairchild appears at Defendant Community Health Care Inc.'s clinic with burn marks on his clothing and a burn mark on his chest – a classic sign of sedation for substance abusers – DEFENDANT CHC HEALTH CARE, INC. ORDERS BLOOD TESTS TO DETERMINE PEAK LEVELS OF SEDATION BUT NEVER DOES THE TEST;
13. February 17, 2005 – Fairchild missed another counseling session – a continuation of a long history of missed counseling and dosing sessions – indicating patient is not clinically stable;
14. April 4, 2005 – Fairchild crosses center line on Rte. 9 in Marlboro, Vt. striking Plaintiff Erin Lackey's vehicle, substantially injuring Erin Lackey and killing 8 year old Kayla Lackey and himself[.]

Plaintiff argues that, notwithstanding CHC's knowledge of the events detailed above, "it failed to properly monitor, supervise and treat Fairchild, and was wanton and reckless in its

3

treatment" of him. Specifically, Plaintiff argues CHC failed to properly coordinate with Dr. Slowinski on a host of issues, and otherwise provided negligent treatment by: (1) failing to advise Slowinski "to discontinue long term treatment of Fairchild with addicting benzodiazepine medication such as klonopin and other sedating drugs such as trazadone"; (2) "fail[ing] to warn Fairchild not to drive while taking methadone in combination with klonopin and trazodone"; (3) fail[ing] to properly supervise Fairchild's treatment, including ordering, but failing to conduct, blood tests of Fairchild "to determine peak sedation levels in January, 2005, 2 ½ months prior to the subject collision"; (4) "fil[ing] a methadone take-home authorization form on March 3, 2005, with false and inaccurate information; (5) "[a]ssign[ing] a counselor/case manager to Fairchild between November 2004 and April 4, 2005 who was inexperienced, overwhelmed and admitted to never having read Fairchild's medical history; (6) "authoriz[ing] the distribution of methadone to Fairchild without taking into account his particular circumstances"; (7) "fail[ing] to put in place appropriate safeguards and procedures to ensure that large volume of patients, including Stephen Fairchild, were treated, medicated, tested, and monitored properly"; and (8) "fail[ing] to properly implement the procedures that were put in place."

In sum, Plaintiff argues:

> [t]he conduct of the defendant Community Health Care Inc., a privately owned and for profit company, as set forth above constitutes a reckless and wanton disregard for the public in general and the Plaintiffs in particular and was motivated by a desire to maximize its profits and enrich itself for the benefit of its owners[.]

CHC disputes Plaintiff's characterization of its conduct, but argues Plaintiff's amendment is futile even accepting the accuracy of the events just described. Specifically, CHC argues Plaintiff's allegations make out nothing more than a negligence claim, from which, as in *Brueckner*, no inference of malice can be drawn, because the allegations lack the necessary

4

element of bad motive. Plaintiff responds that CHC's sensitive role as a methadone provider amplifies the outrageousness of its conduct, arguing that the bad motive element is satisfied by CHC's alleged quest for profits at the expense of providing adequate supervision and care to its patients, who in turn inevitably posed a significant risk to public safety. Unlike *Brueckner*, where defendant recklessly ignored issues of hazing, Plaintiff maintains here that CHC *knew* Fairchild was dangerously over-medicated, yet deliberately continued down an unsafe treatment path to maximize profits.

CHC's reliance on *Bolsta v. Johnson*, 176 Vt. 602, 604 (2004) serves to emphasize the fine distinctions which characterize the jurisprudence involving punitive damages, despite several recent attempts by the Vermont Supreme Court to bring clarity to the subject. See, e.g., *Follo v. Florindo*, 2009 VT 11 (distinguishing malice implied as a matter of law from a determination of "actual fraud", compared with the intentional and deliberate wrongdoing with the "character of outrage frequently associated with crime" described in *Bruekner*). Addressing the facts found wanting in *Bolsta,* CHC maintains that if the reckless conduct of a drunk driver, whose BAC was .156, and who was driving with a suspended license as a result of a prior DUI conviction, lacked bad motive to merit punitive damages, then Plaintiff's allegations here must also fail. Conceding that the boundary for "bad motive" remains imprecise, the Court is not convinced that *Bolsta* controls the outcome here. Rejecting the notion that bad motive should be inferred from any repeat DWI conviction, the Supreme Court held that punitive damages required evidence demonstrating "special circumstances, such as personal ill will, or bad motive", beyond the mere conviction. *Id.* at ¶ 9. Here, unlike *Bolsta*, Plaintiff's allegations that CHC recklessly dispensed dangerous drugs to Fairchild while placing profit from the continuing relationship above any concern for public safety, state a claim which, if proved, would allow the

jury to find the improper motive necessary to a punitive damages award.  See *DeYoung*, 185 Vt. at 280-81 (fact that attorney's motive was to enrich himself, rather than intentionally to harm defrauded client not determinative of malice; "[i]f that were the case, punitive damages would never be available against companies that, for example, knowingly placed dangerous products into the market, hoping that people would not get hurt, but willing to ignore a great risk of harm to increase profits").

In sum, considering (1) the high standard required to deny an amendment as futile, as well as (2) the unclear and fact-dependent state of punitive damages law, the Court cannot conclude at this stage that Plaintiff's allegations necessarily fail to state a claim for punitive damages.[2]

**Undue Delay and Prejudice**

Motions to amend may be denied if they have been unreasonably delayed, causing prejudice to the opposing party.  *Stratton v. Steele*, 144 Vt. 31, 36 (1984).  CHC argues Plaintiff's Motion to Amend is too late, given the case's age, and the advanced state of discovery.  Plaintiff responds that pretrial discovery is ongoing,[3] and argues that Vermont law permits amendments to pleadings even at trial.  See, e.g., *Bevins v. King*, 143 Vt. 252, 256 (1983).  Plaintiff further argues its punitive damages claim only recently became apparent based on "the state of the record elicited to date . . . ."

Nonetheless, CHC argues it will be prejudiced if Plaintiff's amendment is granted now, as it will be required to re-depose Plaintiff's experts, some out-of-state, at considerable expense.

---

[2] CHC has also argued Plaintiff's amendment is futile because Plaintiff failed to timely disclose experts necessary to prove punitive damages.  However, given the plasticity of the discovery schedule to date, having been extended on several occasions by stipulation, and the ongoing state of pre-trial development, the Court's order below grants the necessary extension to the scheduling order to accommodate late disclosure.

[3] At a February 2, 2010 hearing, both parties acknowledged this case will not be trial-ready for several months.

CHC argues "[a]t the very least, if the Motion is granted, the discovery schedule should be extended once again to allow for the re-deposition of Plaintiff's experts <u>at the expense of Plaintiff, including attorneys fees and travel costs</u>."

One factor in determining whether to deny a motion to amend as prejudicial is whether the prejudice can be lessened by attaching curative conditions. *Id.* at 256 (the trial court has discretion to grant an amendment subject to costs) (citing Reporter's Notes, V.R.C.P. 15). Other jurisdictions have interpreted rules synonymous to 15(a) as permitting the court to condition amendments on the late-filing party reimbursing the other party for resulting expenses including attorney's fees. See, e.g., *Fengler v. N.W. Conn. Homes*, 575 A.2d 696, 699 (Conn. 1990) (noting the remedial purpose of permitting amendments subject to conditions); *Leased Optical Departments-Montgomery Ward v. Opti-Center*, 120 F.R.D. 476, 480-82 (D.N.J. 1988) (interpreting Federal Rule 15(a) to allow attorney's fees).[4]

Plaintiff's rationale for her late amendment, that her punitive damages claim only recently became apparent as a result of discovery, is reasonable only to a point. As argued by Defendant, the Court is left unconvinced that the circumstances now proffered as grounds for punitive damages were not patent prior to the depositions of a number of experts. While declining to deny the motion to amend on account of this delay, the Court must balance Plaintiff's ability to pursue her rightful claims, with CHC's right to avoid duplicative expenses.

Weighing these factors, the Court will require Plaintiff to tender to CHC one half of any estimated costs - including travel and expert witness fees, but excluding attorney's fees - which are associated with a demonstrated need to re-depose Plaintiff's experts in order to address the issue of punitive damages. This result avoids unduly penalizing Plaintiff for pursuing her claims,

---

[4] Vermont Rule 15 "is virtually identical to Federal Rule 15 . . . ." Reporter's Notes, V.R.C.P. 15.

while recognizing that CHC will incur some additional expenses which might have been avoided if the motion had been made more promptly.

Based on the foregoing, it is hereby **ORDERED**:

Plaintiff's Motion to Amend her Complaint is **GRANTED**.

It is further ordered Plaintiff shall tender to CHC one half of any estimated costs - including travel and expert witness fees, but excluding attorney's fees - which are associated with a demonstrated need to re-depose Plaintiff's experts in order to address the issue of punitive damages.

The parties shall within 5 days of this entry confer in good faith regarding an extension to the existing scheduling order.  Such stipulated proposal shall be submitted to the Court within 20 days of this entry, or each party shall submit its separate proposal in the event of disagreement, with a Rule 26(h) affidavit explaining the grounds for dispute.


Dated                        , at Newfane, Vermont.


_____
John P. Wesley
Presiding Judge