# James G. Villa v. Thomas F. Heilmann

[649 A.2d 768]

No. 92-372

Present: Gibson, Dooley, Morse and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed September 9, 1994

*Francis X. Murray* and *William F. Ellis* of *McNeil & Murray*, Burlington, for Plaintiff-Appellant.

*Michael B. Clapp* of *Dinse, Erdmann & Clapp*, Burlington, for Defendant-Appellee.

**Johnson, J.** Plaintiff James Villa, an attorney who sued former law partner Thomas Heilmann for breach of contract when defendant refused to split the contingency fee he received in a case that was pending at the time the parties ended their law practice together, appeals from a jury verdict in favor of defendant. We affirm.

Most of the relevant facts are not in dispute. In 1977, prior to the time the parties became partners, defendant was retained by Greenmoss Builders to represent its interests in a defamation action against a company that issued an erroneous credit report. In August 1979, the parties formed a law firm known as Villa & Heilmann, P.C. While a partner at the firm, defendant tried *Greenmoss* to a jury, which returned a verdict in favor of his client in the amount of $350,000. The trial judge, however, set aside the verdict and ordered a new trial. The case was pending before this Court in June 1982 when the parties decided to end their relationship as law partners. On June 1, 1982, the parties signed the following agreement, hereinafter referred to as the Greenmoss agreement:

### AGREEMENT

THIS AGREEMENT is between VILLA & HEILMANN, a Professional Corporation, and JAMES G. VILLA and THOMAS F. HEILMANN, both individuals.

In light of the fact that both James G. Villa and Thomas F. Heilmann will no longer be employed by the law firm of Villa & Heilmann; and that the case of Greenmoss Builders, Inc. vs. Dun & Bradstreet, presently on appeal, is a complex and difficult lawsuit best handled by the two individuals rather than the law firm of Villa & Heilmann; the three parties agree herein as follows:

1. Any fee paid in the case of Greenmoss Builders, Inc. vs. Dun & Bradstreet shall be paid to Villa & Heilmann.

2. The proceeds shall be divided as follows:

a) A fee, as already agreed, shall be paid to the law firm of Valsangiacomo & Detora.

b) All costs and disbursements shall be paid to the party who incurred them.

c) The remainder of the fee shall be split equally between James G. Villa and Thomas F. Heilmann.

Other than offering occasional advice, plaintiff did not work on *Greenmoss* prior to the Greenmoss agreement, and did not work on the case at any time following the agreement.

After June 1982, the parties, plaintiff's wife, and two other people continued to be involved together in a real estate partnership known as 231 Maple Street Partnership. By the summer of 1984, relations between the parties had become strained. In August 1984, plaintiff and his wife purchased the partnership interests of defendant and the other partners. Defendant conveyed his interest in the partnership for cash and a general release from all suits, debts, or contracts arising from matters preceding the date of the release. The general release did not refer to the Greenmoss agreement or the *Greenmoss* case, which was still in the appellate process.

In 1983, this Court reinstated the jury verdict in *Greenmoss*. Following two arguments before the United States Supreme Court, the case came to a final resolution in 1985, with Greenmoss Builders receiving a jury verdict plus interest, a total of $572,845. In accordance with defendant's contingency fee agreement, he was paid $213,641 for his services. Shortly thereafter, plaintiff requested fifty percent of that fee pursuant to the Greenmoss agreement. Defendant refused to pay, citing among other things, the general release plaintiff had signed in August 1984. Plaintiff asserted that the general release was never intended to extend beyond matters involving the real estate partnership.

In 1988, plaintiff filed a complaint against defendant for breach of contract for failing to pay him his share of the *Greenmoss* fee. The case was tried before a jury. At the conclusion of the presentation of evidence, the court read its instructions and provided the jury with a set of eight interrogatories. The first two interrogatories read as follows:

1. Was the Greenmoss agreement one to settle accounts between the plaintiff and the defendant upon their departure from the firm of Villa & Heilmann, P.C.?
2. Was the Greenmoss agreement one for the division of fees for work that the plaintiff and the defendant might perform on the case in the future and for which they would be paid?

The jury was instructed to render a verdict for defendant if it answered no to question one and yes to question two. Based on its

negative response to the first question and its affirmative response to the second question, the jury rendered a verdict for defendant without answering the last six interrogatories.

On appeal, plaintiff argues that the trial court erred by (1) instructing the jury on defendant's claim that the Greenmoss agreement improperly split fees between unassociated attorneys, in violation of DR 2-107 of the Code of Professional Responsibility; (2) refusing to instruct the jury that consideration for the Greenmoss agreement existed as a matter of law; (3) excluding expert testimony on custom and practice relating to attorney partnerships; (4) excluding expert testimony and failing to instruct the jury on the fiduciary duties that existed between the parties; and (5) directing a verdict in favor of defendant on plaintiff's fraud claim.

The first issue raised by plaintiff concerns DR 2-107, which provides that a lawyer is not permitted to divide a fee for legal services with another lawyer who is not his or her partner or associate, unless (1) the client consents after full disclosure, (2) the division is made in proportion to the services rendered, and (3) the total fee does not clearly exceed reasonable compensation for all legal services rendered. This disciplinary rule does not prohibit, however, "payment to a former partner or associate pursuant to a separation or retirement agreement." DR 2-107(B).

Following the close of evidence in the case, defendant sought a directed verdict, arguing that the Greenmoss agreement violated DR 2-107 because it provided for the splitting of fees for legal services performed by two attorneys who were no longer associated with each other. The court denied the motion, pointing out that plaintiff claimed the Greenmoss agreement represented a distribution of assets pursuant to the parties' termination of their association with the law firm, not an agreement regarding compensation for future work to be done on the *Greenmoss* case. The court indicated it would instruct the jury on this point as follows:

> If you determine that this contract was for work that they would both be doing in the future then Mr. Villa is not entitled to enforce paragraph 2(c) because at the time the contract was written the parties overlooked the Canon of Ethics which says that lawyers unassociated together cannot share a client's fee except according to the value of the time that each has contributed to the case. Under paragraph 2(c), Mr. Villa cannot enforce payment in excess of the value of the time he spent on the case. As it turned out that Mr. Villa did not spend any time on the

Greenmoss case after he signed the contract and left the old firm, he cannot claim any part of the fee from Mr. Heilmann.

Plaintiff objected to this instruction at the charge conference, arguing that defendant had waived any claim of illegality under DR 2-107 by failing to raise it as an affirmative defense in his pleadings. Plaintiff pointed out that the court had excluded proffered testimony from his expert that the Greenmoss agreement did not violate DR 2-107 because it was part of a separation agreement. He requested that the court either omit the instruction or, in the alternative, instruct the jury further that DR 2-107's prohibition against splitting fees does not apply to separation agreements. The court responded that plaintiff did not need the latter instruction because its charge on the potential ethics violation was relevant only if the jury found that the Greenmoss agreement was a contract for future services rather than a separation agreement to settle accounts. The court then instructed the jury as indicated above.

■ We conclude that any error in the challenged instruction is harmless. See V.R.C.P. 61 (errors that do not affect substantial rights of parties shall be disregarded); *Turgeon v. Schneider*, 150 Vt. 268, 276, 553 A.2d 548, 553 (1988) ("party claiming error in jury instructions must establish not only that they were erroneous but that prejudice resulted"). Plaintiff's position throughout the trial, as noted by the trial court in its charge to the jury, was that the Greenmoss agreement represented a final settlement of accounts between defendant and himself. Plaintiff sought to convince the jury that he was entitled to half of the *Greenmoss* fee, regardless of how much time he put into the case, because it was an asset of the firm. He contended that defendant agreed to split fees that might be forthcoming in *Greenmoss* as consideration for any interest plaintiff may have had in the firm had there been an accounting of work in progress. On the other hand, defendant asserted that the Greenmoss agreement represented the parties' intention to share fees received from the case based on their expectation that they would both be doing future work on the case. The jury's response to the first two interrogatories indicates that it accepted defendant's interpretation of the agreement. Because the jury determined that the Greenmoss agreement was intended to divide fees for future work on the case rather than to settle accounts upon termination of the parties' law partnership, the court's charge that plaintiff would not be entitled to enforce the fee-splitting arrangement if the contract was for work they would

both be doing in the future could not have prejudiced plaintiff. Given the jury's determination of the meaning of the contract, and the undisputed fact that plaintiff did not work on *Greenmoss* after June 1, 1982, plaintiff would not have been entitled to any fee under the agreement regardless of whether the fee-splitting arrangement violated ethical rules.\*

■  The challenged instruction may have been superfluous, but it was not prejudicial. The court explicitly instructed the jury in its summary of the charge that defendant could be required to pay plaintiff one half of the $213,641 fee collected in *Greenmoss* if the parties intended the agreement to settle accounts between the parties, if consideration existed for the agreement, and if the release did not cover the agreement. The jury did not reach the latter two issues because, as noted, it rejected plaintiff's assertion that the agreement was intended to settle the parties' law-firm accounts. Accordingly, we reject plaintiff's claim that he was prejudiced by the challenged instruction.

■  Moreover, because the jury did not need to answer the interrogatory asking if there was consideration for defendant's agreement to split the *Greenmoss* fee, the court's refusal to instruct the jury that consideration for the agreement existed as a matter of law could not have prejudiced plaintiff. "Whether there is consideration for [an agreement] is a question of law, not fact." *Lloyd's Credit Corp. v. Marlin Management Services, Inc.*, 158 Vt. 594, 598, 614 A.2d 812, 814 (1992). Although plaintiff argued that there was consideration in this case as a matter of law, he conceded that the issue of whether consideration existed could go to the jury, and he has not argued otherwise in his appellate brief. Therefore, reversal cannot be grounded on the fact that the court treated the issue as a question of fact for the jury. See *Keene v. Willis*, 128 Vt. 187, 188, 260 A.2d 371, 371–72 (1969) (where case proceeded on theory that tenant was entitled to recover consequential damages for breach of covenant

---

\* Plaintiff points out in his statement of the case that he objected to the first two interrogatories on the same basis that he objected to the instruction on the ethics violation. Further, at one point, he lists as one of his issues presented for review that the court erred by instructing and submitting interrogatories to the jury on the issues of illegality and DR 2-107. The first two interrogatories, however, do not directly concern illegality of the agreement or ethical violations; rather, they merely ask the jury to choose between the parties' competing positions on the meaning of the Greenmoss agreement. Plaintiff has not indicated how submission of the interrogatories constitutes error, and indeed we find no error.

to repair, and such issue was so charged without objection of the parties at trial or on appeal, theory became law of case). In any event, as noted, because the jury did not need to reach the interrogatory on consideration, plaintiff cannot show prejudice.

■ Plaintiff also argues that the court erred by not instructing the jury that when a contract is susceptible of two meanings, the meaning that would give it effect as a legal contract should be adopted. According to plaintiff, the trial court instructed the jury that if it construed the Greenmoss agreement as a contract to split future fees, the agreement would be illegal under DR 2-107; therefore, it should have further instructed the jury that plaintiff's characterization of the agreement as a contract to settle accounts is preferred over defendant's characterization of the contract as a fee-splitting arrangement. This argument is unpersuasive. First, the trial court did not instruct the jury that the agreement would be illegal if defendant's interpretation were accepted; rather, it instructed the jury that plaintiff would not be entitled to enforce the agreement if that were the case. More importantly, determining the parties' intent in making the agreement was a question of fact for the jury. *United Railway Supply & Service, Ltd. v. Boston & Maine Corp.*, 148 Vt. 454, 457, 535 A.2d 325, 327 (1987) (intent of parties regarding ambiguous contractual provision is question for trier of fact). For all practical purposes, the jury instruction requested by plaintiff would have taken from the jury its role of determining what the parties intended by their ambiguous agreement. None of the cases cited by plaintiff hold that a court must instruct jurors that they should interpret a contract in a way that renders the agreement enforceable. We find no abuse of discretion in the court's refusal to instruct the jury as requested.

■ Next, plaintiff argues that the court erred by excluding certain expert testimony. First, plaintiff contends that the court erred by excluding testimony from Martin Miller, a Vermont attorney, regarding how law partnerships customarily operate and how law partners terminate their professional relationships. Attorney Miller would have testified that accepted trade and practice entitled plaintiff to share in fees generated from *Greenmoss*, regardless of the amount of work he put in the case, because the case was an asset of Villa & Heilmann at the time the parties terminated their relationship. According to plaintiff, because the testimony would have explained to the jury that he was entitled to some compensation from *Greenmoss*

and other cases kept by defendant following the parties' breakup, the jury would have been more inclined to perceive the Greenmoss agreement as a contract between law partners to settle accounts.

Under V.R.E. 702, expert testimony may be admitted if the proposed witness has "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." The admission or exclusion of evidence under this rule is highly discretionary; the court's ruling is not subject to revision unless the appealing party clearly and affirmatively demonstrates that such discretion has been abused or withheld. *State v. Percy*, 156 Vt. 468, 475, 595 A.2d 248, 252 (1990). Further, the appealing party has the burden of showing that any abuse of discretion was prejudicial. *Id.*

Here, the court concluded that the proposed testimony of Attorney Miller would not assist the jury in determining the parties' intent in signing the Greenmoss agreement. We conclude that although the proffered testimony may have been relevant, plaintiff has failed to show prejudicial error requiring reversal of the judgment. Through direct and cross-examination of witnesses and through opening and closing arguments, plaintiff made the point to the jury that the parties, as law partners, were entitled to share in the fees obtained from the firm's cases, regardless of which attorney worked on which particular cases. In support of his contention that the parties intended the Greenmoss agreement to be a final distribution of a firm asset—the *Greenmoss* case—to settle accounts upon the dissolution of their law partnership, plaintiff contended that he was entitled to a share of the *Greenmoss* fee because he contributed billable work for the firm that provided a steady income for both parties, while defendant did contingency work such as *Greenmoss* that occasionally provided a big payoff. The proffered testimony of Attorney Miller, though perhaps collaterally relevant to issues before the jury, would have added little to plaintiff's case, even considering that the testimony was offered as coming from an objective expert. Cf. *United States v. Heath*, 970 F.2d 1397, 1405 (5th Cir. 1992) (although trial court erroneously limited testimony of real estate lawyer regarding use of nonrecourse loans to execute real estate deals, limitation of testimony did not mandate reversal because information was available from other witnesses). Indeed, during his lengthy offer of proof and the ensuing bench conference, plaintiff's counsel gave little emphasis to the proposed testimony whose exclusion he challenges here; rather, he emphasized the need for Attorney Miller's expert

testimony that defendant had fiduciary duties toward plaintiff with respect to the general release the parties signed.

■ Plaintiff also argues that the court erred by excluding testimony from a law professor who would have explained why the prohibition against the splitting of fees by unassociated attorneys in DR 2-107 did not apply to the Greenmoss agreement. The court did not err in excluding expert testimony on this question of law. See *Town of Brighton v. Griffin*, 148 Vt. 264, 271, 532 A.2d 1292, 1296 (1987) (as general rule, witness may not give opinion on question of law). Further, the jury's verdict is unaffected by this claim of error.

Plaintiff's next argument is that the court erred by excluding expert testimony, and failing to instruct the jury, on the fiduciary duties that existed between the parties as law partners. At trial, plaintiff contended that, as plaintiff's partner in the 231 Maple Street Partnership, defendant violated fiduciary duties owed to plaintiff by failing to inform plaintiff that he intended the general release the parties signed in 1984 to extend to the Greenmoss agreement. Because the jury did not reach the interrogatories regarding the release, the verdict is unaffected by this claim of error; therefore, we need not address the issue.

Finally, plaintiff argues that the trial court erred by, in effect, directing a verdict in favor of defendant on plaintiff's fraud claim. During his opening statement, plaintiff stated that the evidence in the case would demonstrate that defendant perpetrated a fraud upon plaintiff by failing to disclose to plaintiff that he intended the general release to extend to the Greenmoss agreement. Following defendant's objection, the court informed the jury that plaintiff had made no claim of fraud in his pleadings. We reject plaintiff's argument that the court "directed a verdict" on a claim of fraud; plaintiff's counsel himself stated to the court that plaintiff was not claiming fraud as a cause of action. In essence, plaintiff's "fraud" claim is the same as his claim that defendant breached fiduciary duties by not informing plaintiff of his intent concerning the release. To the extent that plaintiff is arguing that the court erred by not instructing the jury, or allowing expert evidence, on the issue of whether defendant improperly failed to disclose to plaintiff his true intentions regarding the release, we need not address this argument because, again, the jury's verdict is unaffected by the claim of error.

*Affirmed.*