NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 31

No. 24-AP-174

| | |
|---|---|
| Daniel Shaffer, In His Capacity as the Administrator of the Estate of Jared T. Shaffer | Supreme Court |
| v. | On Appeal from Superior Court, Caledonia Unit, Civil Division |
| Northeast Kingdom Human Services, Inc. | February Term, 2025 |

Daniel P. Richardson, J.

David S. Shaffer, Pro Se, Greenwich, Connecticut, Plaintiff-Appellant.

Richard Windish and Elizabeth Willhite of Primmer, Piper, Eggleston & Cramer, Woodstock, for
  Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **REIBER, C.J.** In this wrongful-death action, plaintiff the Estate of Jared Shaffer, through Daniel Shaffer as administrator, appeals from a jury verdict and judgment in favor of defendant Northeast Kingdom Human Services, Inc. The estate argues the court erred by instructing the jury on comparative negligence, by providing jury instructions that it claims were misleading, and by sustaining defendant's objections to certain questions the estate attempted to ask defendant's corporate representative at trial. The estate further argues the jury verdict must be reversed because the jury deliberated too quickly and because the evidence overwhelmingly supported the estate's claim that defendant acted negligently in performing its

duty to oversee and monitor developmental disabilities services and care for decedent. We find error in the proceedings but no prejudice to the estate and therefore affirm.

## I. Factual Background

¶ 2. The record reveals the following facts. The estate's claims arise out of the death of decedent Jared Shaffer, a developmentally disabled adult. Decedent passed away on April 18, 2017. He had multiple disabilities, including autism, epilepsy, obsessive-compulsive disorder, and anxiety. Decedent's residence at the time of his death was Heartbeet Lifesharing, a therapeutic community residence in Hardwick, Vermont. Defendant Northeast Kingdom Human Services, Inc. was the designated agency[1] assigned to administer decedent's Medicaid waiver funds. His primary care provider was Peter Sher, M.D., an employee of the Hardwick Area Health Center. Heartbeet was decedent's residential provider and ensured that he attended medical appointments. Daniel Shaffer, decedent's father, was decedent's court-appointed legal co-guardian, along with decedent's mother, Susan Gilberg. On July 11, 2017, father was appointed the administrator of decedent's estate.

¶ 3. Days before decedent's death, he visited his father in Connecticut. He stayed at father's home between April 14 and April 17, 2017. During this visit, father observed that decedent's affect had changed, he had lost weight, and he was breathing heavily. Father contacted Heartbeet to request that decedent return to Vermont and see his primary care provider.

¶ 4. Decedent returned to Vermont on April 17, 2017. That same day, Heartbeet took him to see Dr. Sher. Dr. Sher did not perform a cancer screening, and did not send decedent to

---

[1] Section 7252 of Title 18 defines "[d]esignated agency" as a "designated community mental health and developmental disability agency." This entity is tasked with "ensur[ing] that community services to persons with a mental condition or psychiatric disability and persons with a developmental disability throughout the State are provided through designated community mental health agencies." 18 V.S.A. § 8907(a).

the hospital. The next day, on April 18, decedent suffered a sudden and acute pulmonary embolism and died. The autopsy revealed that decedent had testicular cancer. The cancer had metastasized to his lungs, liver, and lymph nodes causing the fatal embolism.

## II. Procedural History

¶ 5. The estate first sued Heartbeet, Dr. Sher, and defendant in federal court. In April 2021, the federal case was dismissed for lack of subject matter jurisdiction after the estate settled with Dr. Sher's medical practice.

¶ 6. The estate, by its administrator Daniel Shaffer, filed this wrongful-death action in the civil division against defendant and Heartbeet in May 2021. The estate asserted claims of negligence, negligence per se, and breach of contract against both defendant and Heartbeet. Before the evidence opened at trial, Heartbeet settled, and the case was tried only against defendant Northeast Kingdom Human Services, Inc.

¶ 7. Defendant never sought to add father, as a party. But in its answer, defendant asserted an affirmative defense under 12 V.S.A. § 1036 stating: "Comparative and/or contributory negligence sufficient to bar plaintiff's claims for relief." Defendant sought to implicate father as responsible for his son's death without joining him in his capacity as a co-guardian.

¶ 8. In July 2023, the estate filed a motion in limine asking the court to exclude evidence of any claim of negligence by father as co-guardian and requested that the jury not be instructed on that issue at trial. The estate argued that contributory negligence did not apply because the estate, through its administrator, brought suit as opposed to father filing in his individual capacity. It also asserted that any issue related to comparative negligence of father should be stricken because "[a]ny judgment entered for plaintiff would be for the estate." See 14 V.S.A. § 1492(c).

3

¶ 9. Procedurally, the court treated the motion in limine as a motion to strike the affirmative defense of comparative negligence. It noted that the period within which the estate could have moved to strike an affirmative defense had passed but exercised its discretion to address the merits of whether the comparative negligence defense should be stricken from the case. The court denied the motion because there were disputed questions of both fact and law. The court concluded there were disputed facts about "the extent to which plaintiff was involved" in decedent's healthcare and disputed questions of law about whether father owed a duty to decedent and had breached that duty.[2] The court also noted whether father could be held personally liable, despite only being named in the action as administrator for the estate, remained in dispute and that "any analysis will likely depend on the facts elicited at trial." In doing so, the court rejected "plaintiff's" request to strike the affirmative defense of contributory negligence as a matter of law.

¶ 10. Following jury draw in May 2024, the estate settled with Heartbeet. After a six-day trial, the jury entered a verdict for defendant. The estate timely appealed to this Court.

### III. Discussion

### A. Comparative Negligence

¶ 11. On appeal, the estate first claims that the trial court erred by denying its pretrial motion to strike the affirmative defense of comparative negligence. We agree the trial court committed error in its analysis by conflating the identity of the "plaintiff," the administrator of the estate, with decedent's co-guardian and father, Daniel Shaffer. However, the court acted

---

[2] The trial court repeatedly referred to Daniel Shaffer as "plaintiff" in its denial of the estate's motion in limine despite his party status in the case solely as the administrator for decedent's estate. As discussed below, while this was error, the estate fails to establish that this error resulted in prejudice because references to "Daniel Shaffer" as plaintiff were changed and explained in the jury instructions and the jury never reached the question of comparative negligence due to the fact that they did not find that defendant acted negligently in its care of decedent.

within its discretion to consider the motion, determine that the defense of comparative negligence[3] should remain because of disputed questions of law and fact, and charge the defense to the jury at the conclusion of evidence. The court's error was rectified by correction in the jury charge and jury instructions and, ultimately, the estate was not prejudiced because the jury never reached the affirmative defense.

¶ 12. In its motion, as noted above, the estate argued that, as administrator, father had no duty to decedent that could give rise to liability for negligence. Initially, the estate did not argue his nonparty status, but made this argument in its "Reply in Further Support" of the motion. The estate argued that although unexplored in its principal brief, "a critical reason" to deny admission of issues concerning comparative negligence was that the wrongful-death action was filed solely by the administrator, and not by father in his personal capacity. The estate further argued that any issue related to comparative negligence of father should be stricken because "[a]ny judgment entered for plaintiff would be for the estate," which it went on to identify as decedent's "next of kin," citing Vermont's wrongful-death statute. See 14 V.S.A. § 1492(c).

¶ 13. The court denied the estate's motion on the basis of disputed factual and legal issues. "A trial court has broad discretion in its pretrial evidentiary rulings." Lamb v. Geovjian, 165 Vt. 375, 379, 683 A.2d 731, 734 (1996). "We will affirm its rulings absent a showing that

---

[3] Comparative negligence is a creature of statute adopted to codify a modification to the common-law doctrine of contributory negligence, "which denied the plaintiff all recovery if the jury found that the plaintiff was negligent to any extent and that the negligence was a proximate cause of the damage." Langlois v. Town of Proctor, 2014 VT 130, ¶ 21, 198 Vt. 137, 113 A.3d 44. Section 1036 of Title 12 defines the defense: "Contributory negligence shall not bar recovery in an action by any plaintiff, or the plaintiff's legal representative . . . but the damage shall be diminished . . . in proportion to the amount of negligence attributed to the plaintiff." 12 V.S.A. § 1036(a). Reference to "legal representative" in the statute is simply for purposes of "recovery in an action" by bringing the lawsuit. This reference does not correspond to negligence attributable to another actor. See Langlois, 2014 VT 130, ¶ 21 (explaining comparative negligence analysis assesses "parties' relative negligence in causing plaintiff's injury" (emphasis added)).

the court has withheld or abused its discretion on clearly untenable or unreasonable grounds." Id. The court correctly identified that the estate's motion, despite being filed as a motion in limine, effectively sought to strike defendant's affirmative defense and made substantive claims that could not be decided on either evidentiary or strictly legal grounds. See Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977) (explaining motions to strike are generally disfavored and should be denied if issues of fact or law are not adequately developed). The court thus did not abuse its discretion by refusing to strike the defense. The court, however, did not cite Langlois, supra, note 3, and did not adequately address questions of nonparty status when contributory negligence is argued by a defendant or the empty-chair defense.[4] Despite these shortcomings, the jury never reached the question of defendant's affirmative defense because it concluded there was no negligence on defendant's part.

¶ 14. The estate also claims that the court should not have instructed the jury on comparative negligence. The estate failed to preserve this objection to the jury instructions by not raising it below. While the estate did object to the comparative-negligence instruction, it was on the ground that defendant had failed to present evidence that father owed a duty to decedent to receive proper medical care or that father's actions or inactions caused decedent not to be diagnosed and treated. In doing so, the estate asserted that there was insufficient evidence

---

[4] "In some jurisdictions, a defendant in a negligence action" is allowed "to designate nonparties whom the defendant believes to be wholly or partially at fault in producing the injury" and have such fault "considered in the aggregate with the defendants' negligence" in determining plaintiff's potential recovery. 57B Am. Jur. 2d Negligence § 960 (2025). See generally CertainTeed Corp. v. Dexter, 330 S.W.3d 64, 73-74 (Ky. 2010) (noting implications of alleged tortfeasors not participating in trial and explaining that under Kentucky law "a participating defendant must still prove liability on the part of the tortfeasor onto whom it seeks to shift some of the blame").

This Court has determined that Vermont's comparative-negligence statute "provides for apportionment among defendants, suggesting that only those joined in the same action should be considered in apportioning damages." Plante v. Johnson, 152 Vt. 270, 273, 565 A.2d 1346, 1347. It was error for the trial court to not address the question of a nonparty's negligence.

of father's negligence. The estate did not object on the ground that Daniel Shaffer could not be legally subject to a comparative-negligence defense in his capacity as administrator. See V.R.C.P. 51(b) ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto either at a charge conference or before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.").

¶ 15.    Nor, as above, can the estate claim it was prejudiced. Here, the jury was instructed: "If you decide that the Estate of Jared Shaffer has proven that Northeast Kingdom was negligent, and that Northeast Kingdom's negligence was a legal, proximate cause of Jared Shaffer's death, then you need to consider what the law calls 'comparative negligence.' " (Emphases added). In other words, the affirmative defense of comparative negligence was to be considered by the jury only if it determined that defendant was at least partially negligent. Without a finding of negligence, the jury was instructed to not consider the relative fault of father. Accordingly, there was no error in the court's instruction of negligence of defendant and the estate fails to show that it was prejudiced. See Villa v. Heilmann, 162 Vt. 543, 548, 649 A.2d 768, 772 (1994) (holding that plaintiff could not show prejudice from allegedly erroneous jury interrogatory because jury did not need to reach interrogatory due to jury's disposition of other issues).

¶ 16.    The estate also argues that certain language in the instructions created a bias in favor of defendant. The jury instructions originally contained reference to "Daniel Shaffer" as plaintiff, rather than the "Estate of Jared T. Shaffer." Additionally, the short-form case name located on the title page of the closing instructions referred only to "Daniel Shaffer" as plaintiff.

¶ 17.    During the charge conference, both parties agreed to change references to plaintiff in the instructions to clarify that the plaintiff in the case was the "Estate of Jared T. Shaffer." The short-form caption, however, was not changed to reflect the identity of the plaintiff as the Estate of Jared T. Shaffer, rather than Daniel Shaffer. The estate was asked if

7

the changes were acceptable, to which it responded through counsel in the affirmative. While the failure to change the case caption was error, because the estate agreed to the language of the jury charge following the charge conference, this claim is not preserved for our review. See V.R.C.P. 51(b).

## B. Evidentiary Rulings

¶ 18.    Next, the estate argues the trial court erred in preventing its attorney from questioning defendant's corporate representative about the master grant agreement between defendant and the state and about an audit of defendant conducted by the Department of Aging and Independent Living.[5]

¶ 19.    The trial court has broad discretion in issuing an evidentiary ruling, and we review such rulings only for abuse of discretion. N.A.S. Holdings, Inc. v. Pafundi, 169 Vt. 437, 447, 736 A.2d 780, 788 (1999). Additionally, a trial court's decision to admit or exclude evidence will not be reversed absent a showing of abuse of discretion resulting in prejudice. Gilman v. Towmotor Corp., 160 Vt. 116, 122, 621 A.2d 1260, 1263 (1992).

¶ 20.    At trial, the estate called a case manager who worked for defendant and had been designated as defendant's corporate representative to testify regarding defendant's duties and obligations toward decedent. Counsel for the estate stated: "And back in June of 2019, during a deposition, I asked you what a master grant agreement was, and you said you didn't know. Do you remember that?" In response, the corporate representative stated: "I don't, but I still don't know what that is." When counsel continued to ask questions about the agreement, defendant objected. Defendant argued that the corporate representative was testifying as a lay witness and lacked personal knowledge of the master grant agreement. The court sustained the

---

[5]    In its principal appellate brief, the estate attempts to introduce a news article about defendant. "[O]ur review is confined to the record and evidence adduced at trial. On appeal, we cannot consider facts not in the record." Hoover v. Hoover, 171 Vt. 256, 258, 764 A.2d 1192, 1193 (2000). The article was not part of the record below; therefore, we do not address it here.

objection, ruling that the witness did not have an understanding of the document and therefore could not offer testimony about the document.

¶ 21. On appeal, the estate argues that the witness should have known about the master grant agreement, because he was the designated corporate representative and a 2019 deposition notice to him indicated that the estate would question him about the agreements. The Vermont Rules of Evidence provide "the testimony of a witness may be excluded . . . unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." V.R.E. 602. Where, as here, the witness testified that he had no knowledge of the agreements, the trial court did not abuse its discretion in prohibiting further questioning about the agreements.

¶ 22. The estate also takes issue with the characterization of the corporate representative as a "lay witness." We see no error. The corporate representative was not called as an expert in a particular subject area to give an opinion or report on a fact in issue. See V.R.E. 702. Under Rule 701, if a "witness is not testifying as an expert," they are considered to be a "lay witness," and their testimony is limited to matters which they have perceived directly. V.R.E. 701; see also Irving v. Agency of Transp., 172 Vt. 527, 529, 768 A.2d 1286, 1289 (2001) (explaining differences between expert and lay witnesses and associated limitations to testimony).

¶ 23. The estate next argues the court erred in preventing it from questioning the corporate representative about a report from a third-party audit of defendant's operations. The estate attempted to ask defendant's corporate representative about a 2015 audit conducted by the Department of Aging and Independent Living. The estate established that the corporate representative was familiar with the auditing process. However, when counsel for the estate began to refer to the findings in the audit report, defendant objected. Defendant argued that the estate failed to establish a foundation for introducing the substance of the audit report into

9

evidence through the witness or that the audit was relevant to decedent's care. Defendant further argued that admission of the audit would be highly prejudicial to defendant.

¶ 24. After hearing these objections, the court allowed the estate to ask additional questions of the corporate representative to establish a foundation. Counsel for the estate proceeded: "And you've indicated that out of the forty-five cases that were reviewed, some of them were your cases." The representative testified: "There could have been. I don't know this particular year. Some years, because [the cases are] randomly selected . . . we have some [reviews] on our caseloads, and sometimes you don't. It's just random." The estate then asked the representative if he "remember[ed] doing some corrective action in 2015" as a result of the audit. The witness responded that he did not remember. The estate then withdrew its question and turned to a completely different line of questioning. At no point did counsel for the estate attempt to move the audit report into evidence, and the court never made a definitive ruling excluding the testimony or the report. "Where counsel abandons a question or line of questioning before the court has ruled that he must do so, there is no basis for a claim of error." State v. Kasper, 137 Vt. 184, 206, 404 A.2d 85, 97 (1979), overruled on other grounds by State v. Discola, 2018 VT 7, 207 Vt. 216, 184 A.3d 1177. We see no error.

## C. Jury Verdict

¶ 25. Finally, the estate argues the jury failed to understand the court's instructions and the speed at which the jury returned its verdict was reversible error.

¶ 26. The jury listened to six days of testimony and was given binders of evidence to assist in deliberations. After deliberating for over an hour, the jury returned with a verdict in favor of defendant. Upon returning from deliberations, the foreperson for the jury began to read from the verdict form rather than delivering the form to the court for the clerk to read. The estate suggests this supports its claim that the jury failed to read and understand the jury instructions.

10

¶ 27. Viewing the record as a whole, "there is no reason to suppose that the jury failed to examine carefully the evidence in reaching its verdict." McCrea v. State, 138 Vt. 517, 523, 419 A.2d 318, 321 (1980). This Court has explained that, in both criminal and civil trials, " '[t]he law does not . . . prescribe the length of time which a jury should take to arrive at a verdict.' " Id. at 522, 419 A.2d at 320 (quoting State v. Lumbra, 122 Vt. 467, 469, 177 A.2d 356, 358 (1962)). Rather, " 'the strength of the evidence is one of the controlling factors on the duration of the deliberation of the jury.' " Id. (quoting State v. Morrill, 127 Vt. 506, 509, 253 A.2d 142, 144 (1969)). There is no requirement that " 'a jury . . . deliberate any longer than may be necessary to agree upon a verdict.' " Id. at 522, 419 A.2d at 320-21 (quoting Morrill, 127 Vt. at 509, 253 A.2d at 144).

¶ 28. The estate argues that the jury should have ruled in its favor because the evidence showed that defendant had a duty to manage decedent's medical services and that defendant breached that duty by failing to appropriately review medical examination documents, resulting in the death of decedent. We will "look at the evidence in the light most favorable to the verdict winner, excluding the effect of modifying evidence, and . . . sustain the verdict if there is any evidence fairly and reasonably tending to support it." McGee Const. Co. v. Neshobe Dev., Inc., 156 Vt. 550, 556, 594 A.2d 415, 418 (1991). "[I]f the verdict is justified by any reasonable view of the evidence, it must stand." Claude G. Dern Elec., Inc. v. Bernstein, 144 Vt. 423, 426, 479 A.2d 136, 138 (1984) (quotation omitted).

¶ 29. At trial, defendant presented evidence of its obligations to decedent. Defendant established that it was neither decedent's medical provider nor residential service provider but was the Designated Agency responsible for coordinating medical services and managing decedent's Medicaid waiver funding. As such, defendant's duties did not include providing medical care for decedent. Defendant's responsibilities included "develop[ing], monitoring[,] and modifying" the Individual Support Agreement which identified the medical support and

11

care needed by decedent. Heartbeet, the residential service provider, had an obligation to ensure medical care and to document the delivery of services identified in the Individual Support Agreement. Defendant was responsible for confirming that the residential service provider arranged follow-up treatment as required. Defendant established that the service coordinator reviewed specific exam results from 2014 and 2015 but concluded that no follow-up was needed because there were no recommendations from decedent's physician. From this evidence, the jury could reasonably conclude that defendant did not owe decedent a duty to provide or oversee his medical care.[6] Therefore, the jury's verdict must stand.

Affirmed.

FOR THE COURT:

_____

Chief Justice

---

[6] In its principal appellate brief, the estate presents an argument that certain documents obtained during discovery and presented to the court at trial were "potentially altered or fabricated." This issue was not raised at trial, and the trial court never had an opportunity to address it. "In general, issues not raised at trial are unpreserved, and this Court will not review them on appeal." Follo v. Florindo, 2009 VT 11, ¶ 14, 185 Vt. 390, 970 A.2d 1230.